# JAMES A. BRUNDAGE, Plaintiff in Error, v. WILLIAM CAMP, Defendant in Error.

## ERROR TO SANGAMON.

If a party sells goods to another and delivers them, although the purchaser is to give a note, with security, for the goods, at a future day, a sale by the purchaser will be good, and the buyer from him, in good faith, will hold the goods against an action of replevin, by the first vendor.

THIS was an action of replevin, commenced by James A. Brundage, the plaintiff in error, against Wm. Camp, the defendant in error. The suit was instituted by the plaintiff, against the defendant, for two mules, in the Circuit Court of Sangamon county. The cause was tried, October term of said court, A. D. 1857.

The action of replevin is for the unlawful detention of the mules of the plaintiff by the defendant; not for the taking.

To this declaration the defendant pleaded:

1st. Not guilty of the detention, as described in the declaration.

2nd. Plea of property in defendant, negativing the right in plaintiff.

And to these two pleas, the plaintiff replied:

1st. Affirming the detention as in declaration, and joining issue to the country.

2nd. That the property in the narration was, and is, the property of the plaintiff, and not that of the defendant. Issue joined on this.

The plaintiff introduced a witness, who stated as follows: That he was present when the trade was made, between Brundage and one Crouch, and that said trade was to this effect: that the said Brundage agreed to sell said mules to said Crouch, upon condition that Crouch was to give $300 for said mules; Crouch agreed to give that sum for the mules, payable in three months, with security, and the names of two or three persons were mentioned, as security. After this part of the agreement had been made, Crouch asked plaintiff if he, Crouch, might take the mules with him then, and the plaintiff said he might, provided he, Crouch, would give him note and security by or on the following Monday. Crouch agreed so to do, and took the mules. A day or two afterwards, Crouch sold said mules to defendant. Nineteen days after said sale, said plaintiff demanded said mules of the defendant, who refused to give them up.

The following instructions were given for plaintiff:

The jury are instructed that if they believe, from the evidence, that the mules in dispute were sold under the following condi-

tions: that Brundage should give Crouch three months' lenity for said mules, said Crouch giving Brundage good personal security mentioned, and that Brundage delivered over the possession to said Crouch, and Brundage agreed that the mules should be Crouch's, if he procured the security agreed upon, then the property should be Crouch's, then the jury are instructed to find for the plaintiff.

The jury are further instructed, that if they believe, from the evidence, that Brundage agreed to sell to Crouch the mules in dispute, and it was agreed that if Crouch brought the agreed security by Monday, that then the property should belong to Crouch; if the jury believe this, the property does not pass to Crouch, and the jury are instructed to find for the plaintiff.

The instructions were refused as asked for, and to which the plaintiff excepted. They were given, with the following modification:

*Provided,* The jury also believe, from the evidence, that defendant was not a *bona fide* purchaser for a valuable consideration from Crouch.

And thus:

*Provided,* They also believe, from the evidence, that the defendant was not a *bona fide* purchaser, for a valuable consideration from Crouch.

And to the giving of which, as modified, the said defendant then and there excepted.

The defendant below asked for the following instruction:

That, even if they believe, from the evidence, that Brundage sold the mules to Crouch, on condition that Crouch should give his note, with security, on the next Monday, and deliver the mules to Crouch, yet if they believe, from the evidence, that Camp purchased the mules of Crouch, *bona fide*, and for a valuable consideration, they ought to find for the defendant.

Which said instruction was given as asked for, and to the giving of which, the said plaintiff, by his attorney, excepted.

The jury found, under the instructions, for the defendant; and thereupon the said plaintiff made a motion for a new trial.

The court refused the motion for a new trial, and entered up judgment on the verdict.

LINCOLN & HERNDON, for Plaintiff in Error.

LOGAN & HAY, for Defendant in Error.

BREESE, J. The questions presented by this record arise out of the instructions, as given by the court. The plaintiff insists, they were, on his part, improperly modified, before given by the

court, and that the instruction given for the defendant, should have been refused.

The plaintiff contends, that both the sale and delivery of the mules, to Crouch, were conditional only, passing the possession, but not the title, to him ; and being so, Crouch, by a sale, could confer no title on his vendee, Camp.

It may be admitted that the sale was conditional, but it can hardly be pretended that the delivery was so.  The delivery was upon the promise of Crouch, that he would give the note and security, by Monday.   On this promise the plaintiff relied, and delivered the mules, saying, at the time, if he gave the note and security on the Monday, the mules should be his.

Here then, was an unconditional delivery.  It did not depend, and could not depend, on the giving a note and security at a future day, for the delivery was in *presenti* and absolute, qualified by nothing—by no condition.

The cases cited by appellant's counsel, go to support, for the most part, the view they have pressed upon the attention of the court, but they are not of binding authority upon this court, nor are they, in their leading features, like this case.

The case of *Heath* v. *Randall*, 4 Cushing, 195, was between the parties to the sale, and was an action of trespass for breaking and entering the plaintiff's close, and taking and driving away a yoke of oxen, the property of the plaintiff.   The defendant pleaded that he was the owner of the oxen, and had a right to enter the plaintiff's premises and take them.  The facts were, that plaintiff had bought of defendant the oxen, and was to pay him $75 for them—that the cattle were to remain the defendant's until paid for, and defendant had the right to take them away any day, until paid for, even if it was the next day.   The oxen were then delivered to the plaintiff, who put them in his pasture.   Before they were taken, the plaintiff had paid twenty-five dollars on the oxen.   The court instructed the jury that if the contract of sale was as stated by the witness, the defendant had a right to take the oxen without any previous demand of the purchase money, and had a right to go upon the plaintiff's land to take them.

Shaw, C. J., in giving the opinion of the court, says, we think the direction of the court below right.   The sale of the oxen was a conditional one, and the condition was precedent, so that no property passed by such sale to the vendee, until performance.   It *seems* that such a conditional sale, though accompanied with an actual delivery for a special purpose, will not vest the property, so that it may be attached by a creditor of the vendee.   *Barrett* v. *Pritchard*, 2 Pick. 512 ; *Reed* v. *Upton*, 10 ib. 522. But however that may be, the court are of opinion that such a

condition is valid *as between the parties*, and no right can be set up by the vendee against the vendor."

The case of *Barrett* v. *Pritchard* was this : A. delivered wool to B., taking a receipt in this form, " Received, etc., wool to manufacture into cloth on the following conditions, viz : the wool is to be reckoned at seventy-five cents per pound, amounting, etc., which amount I agree to pay in six months ; the wool before manufactured, after being manufactured, or in any stage of manufacturing, to be the property of A. until the above amount is paid." It was held, that until such payment the property in the wool remained in A., as well against B.'s creditors as against B. himself.  2 Pick. 512.

The case in 10 Pick. 522, refers to this case, and is the same in principle.

In *Beesom* v. *Dougherty*, 11 Humphrey, 50, the question was, whether the written contract was a mortgage or an absolute sale. It was decided that it was a sale on condition, and until condition performed, no title passed to the vendee.

In 2 Duer, 20, *Herring* v. *Hoppock*, it was held, where by the express terms of a contract of sale, the title is not to vest in the purchaser until the price is paid, the title of the vendor is not divested until payment made, notwithstanding time for payment is given by the contract, and there is a delivery of the property when the contract is made.

The case in 2 Pick., the case in Humphrey, and the case in Duer, were cases in which creditors were parties claiming under execution or attachment, and in the last case, the execution creditors had notice of the plaintiff's claim, and of the conditions under which he had parted with the possession of the property.

The case of *Tibbetts* v. *Towle et al.*, 12 Maine, 341, is the strongest case cited on the part of the appellant, and was briefly this : A. sold a yoke of oxen to B. for a stipulated price, to be paid at a future day. A. to hold the oxen till paid for. A. permitted B. to take possession of them, who sold them to C., and the latter to D., for good consideration and without notice of A.'s lien. The court held that the lien was not defeated, but that A. could maintain trover against D. for the conversion of the cattle, and that too, without waiting the expiration of the term of credit.

The doctrine, as laid down in Shepherd's Touchstone, 118, 119, and 120, is made the basis of the decision in this case. It is there said : " It is a general rule, that when a man hath a thing, he may condition with it as he will. A contract or sale of a chattel personal, as an ox or the like, may be upon condition, and the condition doth always attend and wait upon the estate or thing whereunto it is annexed ; so that although the

same do pass through the hands of an hundred men, yet it is subject to the condition still." In *Patton* v. *Mc Cane*, 15 B. Monroe R. 555, the court say, that a sale with delivery of a chattel at a fixed price, to be paid at a future day, but until paid for, the title to remain in the vendor, does not vest the property in the vendee as to creditors or third persons—that the payment of the money is, by such contract, a condition precedent that must be complied with before the title passes; and reference is made to *Barrett* v. *Pritchard*, 2 Pick. R. 512; Long on Sales, 109; 3 Campbell, 92 ; *Chisk* v. *Wood*, Hardin, 532.

Almost all the cases cited by the counsel for appellant, are referable to this old principle.

Views somewhat different from those expressed in the cases referred to, have been entertained by this court. They are to be found in the case of *Jennings* v. *Gage et al.*, 13 Ill. R. 614.

Gage & Co. had sold to one Van Valin, a bill of goods, at four, six, and nine months, taking his notes and a mortgage on certain real estate, to secure their payment. The goods, by the contract of sale, were to be shipped to Chicago, but were not to be delivered to Van Valin, until he gave an indorser on the notes satisfactory to I. H. Burch.

The goods were forwarded to Chicago, to Van Valin, care of James Peck & Co., who were instructed by Burch not to deliver them without instructions from him. Van Valin, however, paid the charges and obtained the possession of the goods without giving the indorser, and subsequently sold them to Jennings, the defendant. Gage & Co., after a demand and refusal, brought trover, and recovered a judgment for their value.

Among the instructions asked by the defendant, was this : "If the jury believe, from the evidence, that Jennings purchased the goods in good faith of Van Valin, and that at the time of such purchase, Van Valin had actual possession of such goods, and that they were marked in New York by plaintiff with Van Valin's name, and transmitted to him at Chicago, and then actually delivered to him by the plaintiffs' agent and consignee, then as against Jennings, the plaintiffs cannot recover."

The court gave this instruction, qualified thus : " If, however, the agreement between the plaintiffs and Van Valin was, that the goods were only to be delivered to Van Valin upon the condition of his giving security for the price, then if the possession was obtained by Van Valin without giving the security agreed upon, and in violation of the agreement, then he derived no title to the goods which he could sell to Jennings, even if Jennings was a purchaser in good faith, and for a valuable consideration."

This instruction, as modified, makes the case very like the case now under consideration, as the counsel for appellants

would understand, their client, the plaintiff, being substituted for Gage & Co., and Camp, the defendant, for Jennings.

The questions of law arising upon this instruction, which are the same in principle as those given by the court in the case under consideration, are thus disposed of by the court. They say, " That instruction is based on the supposition that Jennings was a purchaser of the goods in good faith, and for a valuable consideration. Whether the evidence would have justified the jury in finding he was such a purchaser, is not now the question."

In this case, the jury have found this defendant was such a purchaser.

The court say, " The good faith of the transaction was a matter peculiarly appropriate for the consideration of the jury, and as such, the defendant had the right to have it submitted to, and passed upon by them. As between plaintiffs and Van Valin, there is no question that the title to the goods would not pass on the state of case supposed in the instruction ; but it is insisted that, as between the plaintiffs and Jennings the law is different, and that, as between them, both parties being innocent, the loss should fall upon the owners, who, by intrusting Van Valin with the possession of the goods, enabled him to commit a fraud, rather than upon Jennings, who is presumed to have acted in good faith and with proper caution."

This the court say is unquestionably the law, where the owners, with the intention of sale, have voluntarily parted with the possession of the goods, and clothed the vendee with the *indicia* of ownership, though under such circumstances as would authorize a rescission of the sale, and a recovery of the goods as against the vendee.

But the court say, " this principle does not apply to sales upon condition, and when the original owner has never consented to the transfer of the property. If he consents to the transfer, though such consent be temporary only, and obtained by fraud, and therefore revocable as against such unfair purchaser, still an honest purchaser from him will be protected, and the first owner must bear the loss."

The qualification of the instruction, the court say, was therefore erroneous, and the judgment was reversed.

Now, in this case, the plaintiff, with the intention of selling, voluntarily parted with the mules on the deceitful promise of Crouch to furnish the note and security. The plaintiff put Crouch in full possession of the property—clothed him with the strongest marks of ownership of such property, enabling him thereby to commit the fraud, which he did commit by the sale

to the defendant, who is a *bona fide* purchaser for a fair price. Who ought, in justice, to bear the loss ?

The rule in such cases seems to be accurately stated by Chancellor Kent, in 2nd Com., page 497. He says, " If it was even a condition of the contract that the seller was to receive, upon delivery, a note or security for payment at another time, he may dispense with that condition, and it will be deemed waived by a voluntary and absolute delivery without a concurrent demand of the security. But if the. delivery in that case be accompanied with a declaration on the part of the seller, that he should not consider the goods as sold until the security be given, or if that be the implied understanding of the parties, the sale is conditional, and the property does not pass by the delivery, as between the original parties ; though as to subsequent *bona fide* purchasers or creditors of the vendee, the conclusion might be different."

In 25 Barbour, 483, *Flecman* v. *McKean*, the court say, " It was insisted on the argument that the rule contended for by plaintiff (as here,) would, if it should prevail, defeat the title of subsequent purchasers, and be highly prejudicial to the interests of commerce. I asked the counsel for the defendant whether, even supposing that a delivery under the circumstances of the case should be deemed incomplete as between the parties, a sale by the purchaser to an innocent dealer would not be valid ? My impression at the time was, and still is, that as the original owner voluntarily places the goods in the hands of the purchaser, and thus makes him the ostensible proprietor, a sale by the possessor to a *bona fide* dealer, without notice, would be valid, and so pass the title ; it was so decided in *Haggerty* v. *Palmer*, 6 Johns. Ch. 437, and the decision was sustained by the Court of Appeals in *Smith* v. *Lyne*, 1 Selden, 41."

In *Harris* v. *Smith*, 3 Serg. and Rawle, 22, Gibson, Justice, says, " If a vendor rely on the promise of the vendee to perform the conditions of the sale, and deliver the goods absolutely, the right of property will be changed, although the conditions are never performed."

In *Smith* v. *Dennie*, 6 Pickering, 262, where a chattel was sold upon condition that the vendee should give an indorsed note, but was delivered without any express reference to the condition, and remained in the possession of the vendee eight days, when it was attached by his creditors, and no reason was assigned why the vendor had omitted to make his claim known, it was held there was a waiver of the condition, so far as to warrant the attachment. The same point was decided in *Carlton et al.* v. *Sumner*, 4 Pick. 516.

These cases but fortify the reasoning in the case of *Jennings* v. *Gage & Co.*, 13 Ill. R. 614. It seems to be right and just, that after the delivery of property on a sale, the vendor relying on the promise of the vendee that he would give the stipulated security, that the vendor should be held to this, and innocent persons be protected from any claim he may set up, growing out of the refusal or neglect to give the security.

In New York, it has been frequently held, and the rule is considered there settled, that if a sale and delivery are conditional, or there is fraud or imposition on the part of the purchaser, though the property passes, the title does not, and on a refusal to comply with the terms of the sale, the vendor may pursue the property and reclaim it, unless protected in the hands of a *bona fide* purchaser. Nelson, J., in *Furniss* v. *Howe*, 8 Wend. 256.

It seems to us that any other rule would be attended with great inconvenience and embarrassment, in such a community as ours, where it is impossible to inquire into the various neighborhood transactions of our people, of which the sale of personal property forms so important a part. Information cannot be had of the private arrangements between parties, not placed on record, and only to be established through imperfect memories. A sale and delivery of a chattel, so far as a *bona fide* purchaser from the first vendee is concerned, without any notice of any reserved claims or rights on the property, ought to be sufficient for his protection.

In *Wilbraham* v. *Snow*, 2 Saunders R. 47, (b), it is said, that if a bailee or other person who has only a special property, sells and delivers the goods to another as his own, *bona fide* and without notice, the general owner cannot maintain trover or any other action against the vendee, because by such a sale by a person who has a special property in, and possession in fact of the goods, the property of the general owner is altered.

And if the owner of goods suffer another to have possession of his property and of those documents which are the *indicia* of property, then perhaps, a sale by such a person would bind the true owner. *Dyer* v. *Pearson*, 10 Eng. C. L. 29.

In the case of *Copeland* v. *Bosquet*, 4 Wash. Cir. C. R. 594, to which appellant's counsel refer, the court say, " If the possession (of personal property) be delivered by the real owner, together with the usual *indicia* of property, or under circumstances which may enable the vendor to impose himself upon the world as the real owner, this might be a case of constructive fraud, which would postpone, even at law, the right of the real owner in favor of a fair purchaser without notice and for a valuable consideration."

22

We think the true principle is here affirmed, and sustains the view we have taken of the principles applicable to cases of this kind.

There is no pretense in this case that Camp, before his purchase, had any notice whatever of this secret claim of Brundage on the property. He is, to all intents and purposes, a purchaser in good faith for a valuable consideration, and without notice of any liens on the property.

There is evidence going to show that Brundage had confidence in Crouch, his vendee, by going security for him shortly before the sale of the mules, on one or more notes. He trusted Crouch, made a sale and a delivery of the mules to him, and put it in his power to defraud others by a sale of them. An innocent purchaser of this property for a valuable consideration, without notice, ought to be protected. Such were the views entertained by the Circuit Court, and believing them to be correct, we affirm the judgment.

*Judgment affirmed.*