## HARRISON BELL

### *v.*

## WILLIAM FARRAR.

1. WITNESS — *competency* — *interest.* Where one who claims to have purchased goods sold them to another, in a suit involving the question of title between the first vendor and the last purchaser, the former claiming title upon the ground that his sale had not been consummated so as to pass the title, the intervening purchaser is a competent witness on behalf of his vendee. His interest is equally balanced between the parties.

2. SALE — *when complete, so as to pass the title* — *delivery of the property sold.* Where a party sold a quantity of oats, and delivered them, to be weighed and then paid for, no time being fixed when they were to be weighed, the facts showing that a credit was to be given, the sale became complete upon such delivery, it not being essential, to pass the title, that the oats should first be weighed to ascertain the quantity.

APPEAL from the Circuit Court of Jo Daviess county; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

This was an action of replevin brought in the court below by Harrison Bell against William Farrar, sheriff of Jo Daviess county, to recover 854 sacks of oats, marked "H. B." Among other pleas, the defendant pleaded property in Robert H. McClellan, as president of the Bank of Galena, and property in the Bank of Galena.

The facts were substantially as follows: On the 10th day of January, 1865, Bell, the plaintiff, made a contract for the sale of two thousand sacks of oats to Andrew Cannon. Bell was doing business at Bellevue, in Iowa, and Cannon had a warehouse at Galena, in this State. The oats were to be delivered at Cannon's warehouse, in Galena, at a specified price. *Edward Marfield*, the agent of Cannon, who made the contract with Bell, testified that the terms of the contract were, that the oats were to be laid down on the platform, then to be weighed and paid for. Bell was to be at no expense afterward. Witness intended to weigh the oats as fast as they came from Bellevue, but could not do so, because Bell sent them too fast. Nothing

was said about when they were to be delivered, — simply to be laid down on the platform, to be weighed and paid for. The oats were about ten days coming to Galena. Witness not being able to weigh them as fast as they came, he put them in Cannon's warehouse.

On the 28th of January, Cannon issued a warehouse receipt for the oats, and passed it over to the Bank of Galena to raise money on, and out of the money so obtained he paid Bell $1,500, and up to the 14th of February he paid, altogether, the sum of $3,295 on the oats.

On the proof, it is considered there was an unconditional delivery of the oats by Bell, and receiving money on account thereof, showing they were not to be weighed at once, but that time was to be allowed for such purpose, thereby affording evidence that the sale was on a credit. They were not to be paid for until weighed, and no time was fixed when they should be weighed. These facts are regarded as justifying the conclusion that the sale was complete and vested the title in Cannon.

Some time after the delivery of the warehouse receipt by Cannon to the Bank of Galena, McClellan, as president of the bank, took the oats under a writ of replevin, and while they were in the possession of the sheriff under that writ, Bell commenced this action against the sheriff.

On the trial, Cannon was permitted to testify on behalf of the defendant, against the objection of the plaintiff.

The plaintiff asked the court to give to the jury a number of instructions, which were refused, but the court gave the following on behalf of the defendant, to which the plaintiff excepted:

"1st. If the jury believe, from the evidence, that the plaintiff in this suit sold the oats in question to Andrew Cannon, to be paid for on delivery, yet if the plaintiff actually delivered the oats to said Cannon without requiring payment down, the plaintiff is considered as having given credit to the said Cannon for said oats, and that the plaintiff had no claim upon the oats on account of their not being paid for.

" 2d. If the jury believe, from the evidence, that the plaintiff, Bell, sold and delivered the oats in controversy to Andrew Cannon, actually and unconditionally, and that Cannon got advances of money on said oats from the Bank of Galena while they were in his possession, and gave the warehouse receipt offered in evidence on said oats to secure such advances, and that the Bank of Galena, through its president, Robert H. McClellan, replevied said oats from said Cannon by virtue of said receipt, and that the defendant, Wm. Farrar, acting as the sheriff of this county, held the oats under a writ of replevin in such replevin suit, at the time this suit was commenced, then his possession was the possession of the said president of the Bank of Galena, Robert H. McClellan, and the jury should find for the defendant.

" 3d. If the jury believe, from the evidence, that the said oats were sold and delivered by Bell to Cannon, together with the sacks in which they were contained, in good faith and without condition, it is wholly immaterial what letters or marks were upon said sacks so far as this case is concerned.

" 4th. If the jury believe, from the evidence, that plaintiff, Bell, sold the oats in dispute to Andrew Cannon, and was to deliver them on the platform of Cannon's warehouse, and to be paid as the oats were weighed, and that he did so deliver them, and that, while said oats were so in Cannon's possession, Cannon borrowed from the Bank of Galena money upon the security of said oats, and upon the warehouse receipt offered in evidence, and that the Bank of Galena advanced said money in good faith without notice of any claim to said oats by Bell, and that said bank, through its president, Robert H. McClellan, replevied said oats from said Cannon, and that the oats were in possession of the defendant, Wm. Farrar, when this suit was commenced under the writ of said McClellan, then in such case the law protects the right of the Bank of Galena to said oats, and the jury should find for the defendant.

" 5th. The law is, that if, by the terms of the sale of personal property, the property is sold and delivery thereof made to the purchaser, the title will pass to the purchaser, if such was the

intention of the parties, even though the property has yet to be weighed to ascertain its amount. And if the proof shows in this case that the oats in dispute were sold and delivered by Bell to Cannon, and were merely to be weighed to ascertain the quantity, the property passed to Cannon by such sale and delivery, and the jury should find for defendant."

The jury found the issues for the defendant, and judgment was entered accordingly. The plaintiff thereupon took this appeal.

The questions arising under the assignment of errors, are, whether the sale by Bell to Cannon was so far complete as to vest the title in the latter, and whether the instructions given were correct. The plaintiff also insists that Cannon was not a competent witness for the defendant.

Mr. L. SHISSLER and Mr. M. Y. JOHNSON, for the appellant.

Messrs. LELAND & BLANCHARD, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of replevin, in the Jo Daviess Circuit Court, brought by Harrison Bell against Willliam Farrar, sheriff of that county, for eight hundred and fifty-four sacks of oats, marked H. B. The defendant pleaded several pleas, the one principally relied on being the plea of property in Robert II. McClellan, as president of the Bank of Galena, and property in the Bank of Galena. Issues were joined and a trial by jury, who found a verdict for the defendant. The plaintiff entered a motion for a new trial for reasons filed, which the court overruled and rendered judgment on the verdict, to which the plaintiff excepted, and appeals to this court.

There is really but one question of any importance in the case, and that is, was there such a sale and delivery of oats by Bell to Cannon, as to vest the title in Cannon?

A subordinate question has been stated, as to the competency of Cannon as a witness for defendant, the appellant insisting he was incompetent to testify.

Cannon was the party to whom Bell delivered the oats, and he,

having them in his warehouse, issued. a warehouse receipt for them, on which he raised several thousand dollars from the Bank of Galena, a part of which, about $1,500, and some sacks of the value of $795, Cannon delivered to Bell.

We are of opinion, Cannon was a competent witness because his interest was balanced. If Bell succeeded in the action, then Cannon would have to pay on his debt to the bank a sum equal to the value of the oats. If the defendant succeeded under the plea of property in the bank, then Cannon would have to pay Bell for the oats, so that it was a matter of indifference to him, pecuniarily, which party prevailed.

As to the real question, whether the sale was so far complete as to vest the title to the oats in Cannon, this was properly left to the jury by instructions on the part of the defendant, to which we can discover no good objection. We think they clearly state the law of the case on the facts proved, and the proof sustains the verdict. There was an unconditional delivery of the oats by Bell, and he received money on account thereof, from time to time, clearly showing they were not to be weighed at once, but that time was to be allowed for such purpose, thereby affording the strongest kind of evidence that the sale was on credit. They were not to be paid for until weighed, and no time was fixed within which, or at which, they should be weighed. These facts we think justified the jury in finding the sale was complete and vested the title in Cannon. The title being so vested, Cannon had the right to dispose of the oats as he pleased, and having, by the warehouse receipt, placed them in the power and possession of the Bank of Galena, the issue on that point was properly found for the defendant.

The appellant complains that certain instructions asked by him were refused by the court.

These instructions so refused were founded on a partial view of the case, the law of which is fully stated in the instructions given for appellee, and which is in accordance with the principles settled in *Brundage* v. *Camp*, 21 Ill. 330.

The judgment of the court below is affirmed.

*Judgment affirmed.*