# WILLIAM A. BUTTERS
*v.*
# EDER V. HAUGHWOUT et al.

1. SALE OF PERSONAL PROPERTY, *where the vendor has acquired title fraudulently — whether a pre-existing debt is a sufficient consideration.* It was held in *Manning* v. *McClure*, 36 Ill. 490, that a promissory note assigned before due, to secure a pre-existing debt, passes to the assignee discharged of latent equities between the original parties to the note, the assignee having no notice of those equities, the assignee thus occupying the same ground as a *bona fide* purchaser for a valuable consideration paid at the time of the assignment. The same rule applies in the transfer of chattels.

2. So, where a person who had purchased goods by means of fraudulent representations, sold and delivered them to his creditor, in payment of a pre-existing debt, who accepted them *bona fide*, and without notice of any fraud in his vendor in obtaining the goods, such creditor is a purchaser for a valuable consideration and will be protected as such against any claim of the original owner, to the same extent he would if he had paid a new consideration for the goods at the time he purchased them.

3. DEMAND — *in replevin* — *when necessary, and when not.* In replevin for a detention of goods, where the defendant obtained them unlawfully, proof of a demand by the true owner and a refusal to deliver them up, is not necessary.

4. So, if the defendant purchased the goods with knowledge that his vendor had obtained them by fraudulent means, then the possession of the defendant, as against the true owner, is unlawful, and no demand is necessary.

5. Or, where the parties had stipulated that the goods in controversy should be sold and the proceeds paid over to the one entitled, that will supersede the necessity for a demand.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

A sufficient statement of the case will be found in the opinion of the court.

The principle question presented in the case is, whether a pre-existing debt, in payment of which a party in possession of goods sold and delivered them to his creditor, is a sufficient consideration to protect such purchaser against the claims of a former owner from whom the intermediate holder purchased the goods by means of fraudulent representations, the last pur-

chaser having no notice of the fraud of his vendor in obtaining the goods.

Messrs. HERVEY, ANTHONY & GALT, for the plaintiff in error.

The main question presented to the court for decision on this record, is the important and somewhat vexed one — whether a *bona fide* antecedent debt is a good consideration in this State for the transfer of personal property, if such transfer be made by the debtor to the creditor in good faith.

The court below followed the decisions of the courts of New York, holding a pre-existing debt not to be a sufficient consideration to protect the purchaser against the claims of a former owner from whom the second vendor had obtained them by fraud, although the second purchaser had no knowledge of such fraud in his vendor.

We insist such is not the correct rule, the great weight of authority in the United States holding the law to be as we contend for it — that a *bona fide* pre-existing debt is a good consideration for the transfer of personal property.

In support of our position, we state that the decisions of the New York courts on this point have been much shaken, even by subsequent decisions of that State, and are completely overthrown by the decision of the Supreme Court of the United States, in 16 Peters, 1, *Swift* v. *Tyson*, Judgment of STORY, J., on pages 16, 17, 19. See, also, *Coolidge* v. *Payson*, 2 Wheat. 66, 70, 73 ; *Townsley* v. *Sumrall*, 2 Pet. 170, 182, which are to same effect.

Chancellor KENT, in his Commentaries, treating of this subject, in a foot note, says : " This opinion (16 Peters, 1) lays down a better rule than New York cases." And this case in Peters is confirmed and approved in 21 Howard U. S. Sup. Ct. Rep. 432, *McCarty* v. *Roots.* McLEAN, J., on page 438, says : " Nor does the fact that the bills were assigned to the plaintiff *as collateral security* for a pre-existing debt impair the plaintiff's right to recover."

In England, the same doctrine has been uniformly acted on, from the case of *Pillans et al.* v. *Van Mierop et al.*, 3 Burr.

1664. See *Bosanquet* v. *Dudman*, 1 Starkie, 1; *Ex parte Bloxham*, 8 Vesey, 531, Lord ELDON, C; *Haywood* v. *Watson*, 4 Bing. 496; *Bramah* v. *Roberts*, 1 Bing. (N. C.) 469; *Percival* v. *Frampton*, 2 C. M. & R. 180.

In *Brush* v. *Scribner*, 11 Conn. 388, the Supreme Court of Connecticut, after an elaborate review of the English and New York cases, *held*, that a pre-existing debt *was* a valuable consideration. And the authorities in all the States we can find, except in New York, *hold* that a pre-existing debt is a valuable and valid consideration in other cases of contract, as well as in cases of the assignment of commercial paper. See, on this point, further, *Covanhoven* v. *Hart*, 21 Penn. 495; 29 id. 389; *York Co. Bank* v. *Carter*, 38 id. 446, is much in point, and, we think, settles the law in Pennsylvania.

The law is held to be the same, as far as we can trace it, in England, Massachusetts, Connecticut, Pennsylvania, Rhode Island, Georgia, Alabama, New Jersey, North Carolina and South Carolina. See 20 Eng. Law and Equity, 103; 2 Ellis & Black. 84; 8 Metc. 110; 2 Cush. 162; 1 Allen, 502; 8 Conn. 507; 5 Rhode Island, 523; 3 Geo. 47; 11 Rich. S. C. 657.

But, whatever may be the various decisions in other States on this point, although the great weight of authority is in favor of our position, the question, we respectfully submit, has been expressly decided in our Supreme Court, in the case of *Manning* v. *McClure et al.*, 36 Ill. 490, in which Mr. Justice LAWRENCE, in delivering the judgment of the court, follows the ruling of the Supreme Court of the United States, in 16 Peters, and disapproves of the law on this subject as laid down by the New York courts.

And in the case of *Gray* v. *St. John*, 35 Ill. 222, the court have, in terms, decided that a pre-existing debt is a valuable and good consideration for the *bona fide* transfer of personal property. The same doctrine is held in *Waggoner* v. *Cooley*, 17 Ill. 245, in which case SCATES, Ch. J., in delivering the judgment of the court, says, "Had the fraud been perpetrated upon the vendor, a *bona fide* purchaser or bailee who receives the goods on a pre-existing debt may hold them against the

defrauded vendor." And in *Ewing* v. *Runkle*, 20 Ill. 457, Mr. Justice Breese, on page 462, in delivering judgment, uses this most accurate and significant language, in defining the rights of a creditor to protect himself: "A vigilant creditor is entitled to all legal advantages, and can protect himself by a *bona fide* transaction."

Messrs. Gookins & Roberts, for the defendants in error.

The authorities cited by the counsel for the plaintiff in error do not apply to the case at bar.

Taking the cases of *Swift* v. *Tyson*, 16 Pet. 1, and *Brush* v. *Scribner*, 11 Conn. 388, as types of all the rest, they all turn upon the principles of commercial law, holding that the *bona fide* holder of a bill of exchange, or other commercial paper, is not subject to have his title questioned, if it is taken in the regular course of business, and before due, for a valuable consideration. That a pre-existing debt is a valuable consideration, there is no doubt, at present, if it was *ever* doubted, whether in New York or elsewhere. But commercial paper, in the regular course of business, is not taken upon the title of the holder, but upon the credit given to it by the policy of the law, and, although *stolen*, a *bona fide* holder will not be affected, if he has no knowledge of the theft, and acts with due caution.

Not so with lands or chattels. They always pass, in this country (where the doctrine of sales in market overt has never been applied), upon the title of the vendor, and, we submit, there is neither reason nor authority for making a distinction between real and personal property, so far as this question is concerned. No such distinction is made in any of the cases referred to, so far as we have been able to discover. They rest upon the ground that the defrauded seller never parted with his title, as fraud vitiates all contracts. True, the transaction may ripen into a sale that will conclude the vendor, by his acquiescence, manifested by his bringing a suit for the purchase-money; by lapse of time with knowledge of the fraud; or by a sale to a *bona fide* purchaser. To be a *bona fide* purchaser

he must have a better right to the property than the original owner. He must purchase in ignorance of the fraud, and must actually pay (and not merely secure) a new consideration, and a pre-existing debt is not such a new consideration (although it is, no doubt, a valuable consideration). We may admit, also, that there may be circumstances which would entitle the party claiming as a *bona fide* purchaser, to favorable consideration, where a previous indebtedness is used as the consideration, in whole or in part, for the new purchase; such as the surrender of securities, the cancellation of mortgages, and the like.

We refer to the following authorities: *Powell* v. *Jeffries*, 4 Scam. 387.; *Root* v. *French*, 13 Wend. 570; *Buffington* v. *Gerrish*, 15 Mass. 156; *Gilbert* v. *Hudson*, 4 Greenleaf, 345; *Thompson* v. *Rose*, 16 Conn. 71; *Johnson* v. *Peck*, 1 Woodbury & Minot, 334; *Mowrey* v. *Walsh*, 8 Cowen, 238; *Bradley* v. *Obeare*, 10 N. H. 477; *Rowan* v. *Adams*, 1 Smedes & M. Ch. 45; *Padgett* v. *Lawrence*, 10 Paige, 170; *Dickerson* v. *Tillinghast*, 4 id. 215; *The Manhattan Co.* v. *Everston*, 6 id. 457; *De La Chaumette* v. *The Bank of England*, 9 B. & C. 209; 17 E. C. L. 100; *Jackson* v. *Myers*, 11 Wend. 533; *Met. Bank* v. *Godfrey*, 23 Ill. 577.

The case of *Manning* v. *McClure* is referred to. We have not seen this opinion, as the case is not yet reported, and can, therefore, say nothing about it, further than to remark, that, as it is quoted as an authority to the effect that a *pre-existing debt* is a *valuable consideration*, and as we have no occasion to contest that proposition, we do not need to look into the case further?

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of replevin, brought in the Cook Circuit Court by E. V. Haughwout and others, crockery and china ware merchants in the city of New York, against William A. Butters, an auctioneer in Chicago. The defendant is not a real party to the controversy. He stands in the attitude of a mere stakeholder. James Duncan, of the dry-goods house of

Ubsdell, Pearson & Co. of St. Louis, is the real defendant, who had sent the goods in controversy, with some others of his own, to Butters to be sold. After the action of replevin was commenced, it was agreed between the agent of the plaintiffs and Duncan, that all of the goods sent by Duncan to Butters, should be sold by him together, and the proceeds should be divided between the plaintiffs and Duncan, in proportion to their interests. The action was to recover the possession of twenty-three casks of· French china ware, and their contents, of the value of two thousand five hundred dollars.

The pleas were *non cepit*, *non detinet*, and property in James Duncan. The controversy arises on the third plea.

The jury found a verdict for the plaintiffs. A motion for a new trial being overruled and exception taken, judgment was entered on the verdict, to reverse which the defendant prosecutes this writ of error. Some preliminary objections were made to certain interrogatories propounded to plaintiffs' witnesses, but as the abstract does not show what the answers were, and as they were not pressed upon the attention of the court in the argument, we will not consider them. It may be well to say, however, this court would hesitate to reverse a judgment, simply because depositions in a case like this, had been let in, which contained interrogatories of a leading nature, and that appears to be the principal objection to the interrogatories specified.

The claim of the plaintiffs in the replevin, was based upon the allegations of fraudulent representations made by one Morgan, to whom they sold the goods, and a knowledge thereof by Duncan, who received them from Morgan on account of a pre-existing debt due by Morgan to Duncan.

Duncan claimed the goods by a fair purchase, for a valuable consideration, without any notice of any fraud on the part of Morgan in obtaining the goods.

The only consideration proved, was a pre-existing debt of a large amount, due by Morgan to Duncan, and that these goods were received by Duncan on account of that indebtedness.

It is unnecessary to state the evidence, as the only questions discussed here arise out of the instructions.

The defendant asked the court for these instructions:

" The court instructs the jury, before they can find a verdict for the plaintiffs, they must believe from the evidence, that, before the institution of this suit, a demand for the property in controversy was made on the defendant, either by the plaintiffs or their authorized agent, and a refusal by the defendant to deliver the same ; and if the jury should find, from the evidence, that no such demand was made by plaintiffs before commencing this suit, then the jury will find a verdict for the defendant."

This instruction the court modified by adding : " But if the jury believe from the evidence, that the original purchase by Morgan was fraudulent, and Duncan was privy to the fraud, then his possession as against plaintiffs was unlawful, and no demand was necessary ; and, if so, the jury should find the issue for the plaintiffs."

The modification of this instruction is made the first objection by the plaintiff in error.

We deem the modification proper, the doctrine being, if goods have been unlawfully obtained, proof of a demand by the true owner, and a refusal to deliver them up, is not necessary.

But, in this case, we are of opinion, the stipulation of the parties, that the goods should be sold by the plaintiff in error, and the proceeds paid over to the parties entitled, superseded the necessity of a demand.

The other instructions go to the merits of the case, and we have carefully considered them, presenting, as they do, questions of great interest, and which have been argued with great ability.   They are as follows :

" If the jury should believe, from the evidence, that James Duncan bought the goods in controversy in this suit from Morgan, in good faith, in payment or part payment of a debt which Morgan owed Duncan or Duncan's firm, or either or both of them, without any knowledge of the manner in which

Morgan obtained them from the plaintiffs, then the jury should find a verdict for the defendant, even though they might find from the evidence that Morgan had obtained the goods from the plaintiffs by means of false representations."

" The jury are instructed, as a matter of law, that a fraud is never presumed against a party, but must be proved to the satisfaction of the jury; and the jury is further instructed, that, in order to entitle the plaintiffs to a verdict, they must prove, to the satisfaction of the jury, that Morgan obtained the goods in controversy from the plaintiffs by means of false representations, and that James Duncan, at or before the time he received them from Morgan, knew of the manner in which Morgan had obtained them, or that he received them from Morgan without any consideration, and if the jury should believe, from the evidence, that James Duncan, in good faith, received these goods from Morgan in payment or part payment of an indebtedness which Morgan owed Duncan or Duncan's firm, or either or both of them, and that the evidence fails to show that Duncan knew that Morgan obtained these goods from the plaintiffs by means of false representations, then the jury should find for the defendant."

" The jury are instructed, as a matter of law, that a debtor in failing circumstances has a right to prefer one creditor to another, and to pay any creditor with goods obtained upon credit from another; and if the jury should find, from the evidence, that Morgan was largely indebted to Duncan or Duncan's firm, or either or both of them, and that the evidence fails to show that Duncan knew that Morgan obtained these goods from the plaintiffs by means of false representations, then the jury should find for the defendant."

" The jury are instructed, as a matter of law, that a debtor in failing circumstances has a right to prefer one creditor to another, and to pay any creditor with goods obtained upon credit from another, and if the jury should find, from the evidence, that Morgan was largely indebted to Duncan, or Duncan's firm, or either or both of them, and Morgan, finding he could not pay all his creditors, transferred the goods in con-

troversy to Duncan, in satisfaction, or part satisfaction, of such indebtedness, then the jury should find a verdict for the defendant, if the evidence fails to show that Duncan knew that these goods were obtained fraudulently from the plaintiffs, if they were in fact so obtained."

These instructions the court refused, having previously, on the plaintiffs' motion, instructed the jury that if they found, from the evidence, that Morgan obtained the goods from the plaintiffs by fraud, and that Duncan derived his title to the goods by purchase from Morgan, evidenced by a bill of sale, the only consideration of which was the indebtedness of Morgan to Duncan, on liabilities of Duncan for Morgan, both previously existing, and that no new consideration was paid by Duncan to Morgan at the time of the purchase, the plaintiffs' title to the goods was superior to that of Duncan, although the latter may have been ignorant of the fraud on the part of Morgan in obtaining the goods.

The question is, which instruction was the proper one? They are in direct opposition, and which should have been given? What is the law on the facts assumed?

The counsel for the defendants in error contend, that Duncan could not buy the goods in question from Morgan, the fraudulent vendee, paying nothing for them in the nature of a new consideration, but taking them merely on account of a pre-existing indebtedness, the sale having been promptly disaffirmed by the defendants, and the goods reclaimed so soon as the fraud was discovered.

Counsel admit, that, as to commercial paper, such as bills of exchange and negotiable promissory notes, the holder of such, if taken in the regular course of business, before due, and for a valuable consideration, is not subject to have his title questioned — that, in such case, a pre-existing debt is a valuable consideration for the transfer. But he says, commercial paper, in the regular course of business, is not taken upon the title of the holder, but upon the credit given to it by the policy of the law, and, although stolen, a *bona fide* holder will not be affected

if he has no knowledge of the theft, and has acted with due caution. He insists that it is not so with lands or chattels, they being taken on the title of the vendor. But he admits, that a sale of chattels, effected by fraudulent misrepresentations, may ripen into a title in the vendee so as to conclude the vendor by his acquiescence, manifested by his bringing a suit for the purchase-money, by lapse of time with knowledge of the fraud, or by a sale to a *bona fide* purchaser, but to be a *bona fide* purchaser he must purchase in ignorance of the fraud, and must actually *pay* a new consideration, and a pre-existing debt is not such a new consideration, although it is a *valuable* consideration. And he also admits, that there may be circumstances which would entitle a party claiming as a *bona fide* purchaser to favorable consideration, when a previous indebtedness is used as the consideration, *in whole or in part*, for the new purchase, such as the surrender of securities, the cancellation of mortgages, and the like.

These admissions by the defendants' counsel, seem to us to admit away their whole case. If a pre-existing debt be a valuable consideration for the purchase and transfer of personal property, a most important element to make a sale valid is shown, and if the transaction be fair and honest, with no knowledge of any fraud on the part of his vendor, what is wanting to vest the title in such a purchaser? If a previous indebtedness be used, in whole or in part, as the consideration for the new purchase, and that is a valuable consideration, as is admitted, is it not a question for the jury how this indebtedness was used;—was it in the surrender of securities, the cancellation of mortgages, or the like? It being admitted that a pre-existing debt is a valuable consideration for the sale of goods, in the absence of all knowledge on the part of the purchaser of any fraud on the part of his vendor, the court should, on the admission of the defendant, have instructed the jury as asked by the plaintiff in error. The instruction proceeds on the ground, the goods were taken from Morgan in part payment of a pre-existing debt due from him to Duncan, that they were taken in good faith, and without any knowledge, on the

part of Duncan, of any fraud in Morgan in obtaining the goods. Whether or not Duncan canceled mortgages, or surrendered securities, he held against Morgan, or discharged other indebtedness, in whole or in part, were facts to be inquired into by the jury.

Should it appear to the jury that no price was fixed on these goods, that it was a sale in gross of seven consignments "for value received," and taken by Duncan on account of his claim against Morgan, existing at the time of sale, without showing what he paid for the property and how he paid it, it might be the jury would be justified in finding against him, but these do not affect the law of the case. The question is, not what was proved, but what is the law on a given state of facts. The defendant's second and third instructions were based on the hypothesis that Duncan bought these goods in good faith of Morgan, in part payment of a debt Morgan owed him, without any knowledge of the manner in which Morgan had obtained them. Whether these facts were proved or not, is wholly immaterial. The court, by refusing the instructions, told the jury that such facts, if proved, clothed Duncan with no title, and constituted no defense to the action.

We have examined all the cases cited by defendants in error, as authority in support of the instruction they asked of the court, and they go far to sustain them. They are all, or nearly all, however, based on the decisions of the court of New York, and however respectable they may be, they have no binding force in this court. Those decisions but follow the doctrine established in that court, that the holder of negotiable paper, taken before due, and for a pre-existing debt, holds it subject to all the equities existing between the original parties to it. This is not the doctrine of this court, as announced in the case of *Manning* v. *McClure*, 36 Ill. 490. In that case it was held, after elaborate argument by able counsel, and full consideration, that a note assigned before due to secure a pre-existing debt, passes to the assignee discharged of latent equities ; that the assignee occupies the same ground as a *bona fide* purchaser for a valuable consideration paid at the time of the assignment.

A reference to the authorities there cited fully establishes this doctrine, and we have no desire to abandon it. We think it is consonant with reason and justice. And, after the most serious consideration, we have been unable to perceive any distinction, in principle, between commercial paper which is made the subject of transfer, and goods and chattels. The case of *Manning* v. *McClure*, recognizes to the fullest extent, the principle, that receiving a negotiable note before its maturity in payment of a pre-existing debt, will exclude all equities between the original parties to the note, the assignee having no notice of those equities, and this is in harmony with section 9 of the act relating to negotiable instruments. Scates' Comp. 292. Why the rule should not be the same in the transfer of chattels, we are at a loss to perceive. The reason why it should not, as given by the counsel for defendants in error, is that chattels pass in the market on the title of the vendor, and if he has none, he can confer none by a sale or transfer to his vendee. But, it may be asked, how is a purchaser of a chattel in the possession of his vendor to know he has no title, in the absence of circumstances to excite suspicion so as to put him on inquiry? How is he to know his vendor obtained the goods by fraudulent representations? Possession of goods is one, and a strong, *indicium* of ownership, and if surrounding circumstances cast no suspicion on the character of this possession, why should not a purchaser in good faith of the property, without notice of any latent equity, be protected in the title thus acquired? It was held by this court, in the case of *Brundage* v. *Camp*, 21 Ill. 330, which was an action of replevin for a pair of mules bought by Camp, for value, from one Crouch, and then in his possession, and without notice of any claim of Brundage, that although the sale might not confer title as between Brundage and Crouch, yet, Brundage having sold and delivered the mules to Crouch, his subsequent sale for a valuable consideration and in good faith to Camp, without any notice of any subsisting claim in Brundage, vested the title in Camp. Numerous authorities were referred to in that case, and the doctrine distinctly stated, where a party sells and

delivers a chattel to another, though there might be a secret understanding between them that the title should not pass until certain conditions were performed by the vendee, a sale by such vendee in good faith, for a valuable consideration, to a party having no notice of such an agreement, passed the title to the vendee. It is otherwise in the case of a mere bailment. *Fawcett et al.* v. *Osborne,* 32 id. 411.

The leading case, in support of the views held by the defendants' counsel, is the case of *Coddington* v. *Bay,* 20 John-son, 636, on which the cases cited by them decided by the courts of this country are based.

That was a case in chancery, and it decides that a person receiving negotiable papers in the usual course of trade for a fair and valuable consideration, from an agent or factor having no authority to transfer them, but without knowledge of that fact or notice of the fraud, may hold them against the owner. But when an agent had received notes to be remitted to his princi-pal, and passed them to the defendant as security against responsibilities assumed by him as indorser of the agent's notes, and as the maker of notes lent to the agent for his accommo-dation, but not then payable, and the defendant had no notice or knowledge that the notes belonged to the plaintiff, but believed they belonged to the agent, who had become insolvent at the time the defendant received them, the court held, that, the notes not being received in the usual course of trade, nor for a present consideration, the defendant was not entitled to hold them against the true owner. This doctrine was applied to sales of chattels, as may be seen by the case of *Root* v. *French,* 13 Wend. 570, which was replevin for goods, relied on by defendants in error, and on the *a fortiori* principle, if it is true of negotiable papers, *a fortiori* is it true of goods and chattels merely. In this case the court say it is a general rule, that a person who has no title to property can convey none, but to this rule there are some exceptions ; that, to create such exception, and to give a third person a better title, and a superior equity to the true owner, such third person must have given *value* for such property, or incurred some responsibility

upon credit of it, and without notice of the fraud, such inno-
cent third person is a *bona fide* purchaser for a valuable con-
sideration.    In such a case, the vendor who has been defrauded
of his property, and the *bona fide* purchaser from the fraudu-
lent vendee, are both innocent parties ; and when one of two
innocent parties must suffer from the fraud of a third, the loss
should fall on him who enabled such third party to commit the
fraud.    Possession, the court say, is *prima facie* evidence of
property, but to this general rule there are some exceptions
also.    The *bona fide* purchaser, having no notice of the fraud,
is therefore justified in considering the fraudulent vendee the
true owner, and, considering him as the owner, the *bona fide*
purchaser is justified in purchasing such property and giving
value for it, or in making advances upon it, or incurring re-
sponsibility upon the credit of it, or in receiving it in pledge
for money or property loaned upon it.

In this case, the goods had been taken in payment of a pre-
existing debt, without notice of any fraud, and in good faith,
and it was held, the title of the first vendor was not defeated,
as there was no new credit given to the possessor of the goods,
no money or property advanced at the time of the sale, nor any
new responsibility assumed, but the goods were received upon
an antecedent debt.    The second vendee was not, therefore, a
*bona fide* purchaser for a valuable consideration, and his title,
therefore, not equal to that of the original owner, who was de-
frauded of his property.

There is no difference, or but slight, between this case and
the one before us.    As that case was based upon *Coddington* v.
*Bay*, to which the case of *Manning* v. *McClure* is in direct
opposition, we must, in this case, revert to the *a fortiori* argu-
ment.    If it is true, the assignee of negotiable paper received
before due, takes it, in good faith, in payment, in whole or in
part, of a pre-existing debt, he takes it free from all equities
existing between the original parties to it, *a fortiori*, is it true
of goods and chattels merely.

All the cases cited by defendants' counsel hold, that, if the
party receiving a note parts with any thing valuable, he is en-

titled to enforce the payment of the note, irrespective of the equities as between the original parties. But taking it on a pre-existing debt he parts with nothing, and if he fails in his title, he is in a condition no worse than he was before he took the assignment; and the same is true of the purchaser of goods, he loses nothing by the transaction, he has advanced no new consideration, and is not injured if his title does not prevail. This idea is paramount, and runs through all the cases, but it is mere assumption.

A creditor who takes goods in payment, in whole or in part, of a precedent debt, in good faith, having no reason to suspect any other claim existing to the property, and having no reason to doubt his title, is lulled into security. He rests in the belief that his debt is paid, and, in that belief, foregoes all effort to seek other payment or security.

This idea, although scouted by WOODWORTH, Justice, in the case of Coddington, is, we think, the ruling point in the case. Why, we ask, is not the equity of such a person as strong against another claimant as if he had paid a new consideration — had actually counted out the dollars in payment? He would be in no worse condition in the latter case than in the former, for in either case, on failure of title, he could recover back the money paid, or the amount of the credit he had given on the pre-existing debt, or the value of the securities he had delivered up, or the mortgage on which he had caused satisfaction to be entered. This will not be denied, so that the reason given for the doctrine is more specious than sound.

In the one case, if the title of the new claimant is allowed to prevail, the party taking the goods on an antecedent debt, may lose a debt he would not have otherwise lost. In the other case, he may lose the consideration which he has paid. He is liable to equal injury in either case, and, therefore, we think it is not true to say, that, when property is taken in payment of a precedent debt, the party, if he loses it, is in no worse condition by being obliged to surrender it. At any rate, it is a matter of uncertainty that a party so receiving goods in payment of a precedent debt, is in no worse condition if they

are taken from him, than he was before he received them.    If he loses a security he might have obtained, he is in a worse condition.    If his vendor becomes insolvent after the credit is indorsed on his note or account, or his mortgage entered as satisfied before the goods are reclaimed, he is in a worse condition.    As commercial paper is but the representative of the property of the country, and good policy requiring that the latter should circulate freely, we think, if in the one case a pre-existing debt is a valuable consideration for the assignment, so in the other, the same consideration should be available in its purchase, the element of good faith existing in both transactions.    Every day's experience shows us, that creditors do not usually take 'property in payment of a debt, certainly not when the money can be had ; what difference can it make, then, if a debtor, having no money, honestly transfers his chattels to his creditor to pay a debt? and why should not the creditor be secure in the acquisition, if he has acted in good faith, and is ignorant of any latent equities or prior claim? The hardship, if there be any, is on the creditor, for the reason, such transactions, however honest they may be, are more open to the charge of fraud, and more difficult to be defended against such a charge, than where money is actually paid, but in principle we can perceive no substantial difference.

Even where land is the subject of controversy, where a mortgage was taken in good faith to secure a pre-existing debt, the mortgagee is regarded as a purchaser for a valuable consideration, and protected as such.    *Work* v. *Brayton et al.*, 5 Indiana, 396 ; *Babcock et al.* v. *Jordan*, 24 id. 14.

Adhering, as we do, to the doctrine of the case of *Manning* v. *McClure*, without citing authority in support of it, other than is there to be found, we are satisfied the same principle should be applied to a party who accepts chattels on a pre-existing debt, *bona fide*, and without notice of any fraud in his vendor in obtaining the goods.    Such a party is a purchaser for a valuable consideration, and should be protected as such.

The court below having entertained different views, as expressed in the fourth instruction given for the defendant in

error, and refusing the third and fourth instructions asked by the plaintiff in error, the judgment must be reversed and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*