# C. S. Fifield and C. H. Morse

## v.

## Farmers National Bank of Princeton et al.

*Fixtures—Sales.*

1. Contracts of sale whereby the seller undertakes to secretly retain title in himself, but to give an appearance of ownership in the purchaser, are void as to third parties.

2. Where such seller allows the property sold to be attached to the freehold in a given case, and used in a building as part of the plant, and under a deed running to the purchaser, which required the same not to be removed within a certain number of years, the seller in equity should be held as having waived the secret lien and consented to the machinery being used as a part of the manufacturing plant.

3. The intention of the parties has much to do with the question, whether certain attachments to realty are to be regarded as fixtures that will pass with the land, and this intention is manifested by acts.

[Opinion filed May 25, 1893.]

APPEAL from the Circuit Court of Bureau County; the Hon. DORRANCE DIBELL, Judge, presiding.

On the 1st day of July, 1891, Robert Montgomery and others, citizens of the village of Wyanett, Bureau County, Illinois, entered into a written agreement with one Robert Day by which they agreed to convey to said Day four lots in Brown's addition to said village, and to pay him $6,000; and in consideration thereof said Day on his part agreed to erect on said lots a factory building, forty-eight by one-hundred feet, two stories high, and to put in the necessary machinery and equip the same for a shoe factory, the deed to said lots to provide that the building and machinery to be placed thereon should not be torn down or removed therefrom for five years. In the same month the lots were conveyed by Orson Tuttle, in whose name the title was placed for that purpose, to said Day, containing the provisions above agreed upon, and that said lots should be used for manufacturing purposes alone, which deed at the time was duly recorded.

By way of compliance with his said contract said Day purchased of appellants, dealers residing in Chicago, the list of machinery hereafter described, to place in the said factory, viz:

|  |  |  | lbs. |
|---|---|---|---|
| McKey Tacker, | weighing | ..................... | 100 |
| "    Sewer, | " | .................... | 450 |
| Gillmore Leveler, | " | .................... | 850 |
| Bussell Heal Trimmer, | " | .................... | 300 |
| "    Edge    ,, | " | .................... | 300 |
| Tapley Heel Burnisher, | " | .................... | 470 |
| Naumkegg Buffer, | " | .................... | 180 |

|                      |          |         | lbs.  |
|----------------------|----------|---------|-------|
| Roll Buffer,         | weighing | ......  | 470   |
| Powder Moulder,      | "        | ......  | 1,100 |
| Splitting Machine,   | "        | ......  | 200   |
| Ryder Heel Key,      | "        | ......  | 55    |
| Stoning Shaft,       | "        | ......  | 50    |
| Amazeen Skiver,      | "        | ......  | 25    |
| Lufkin Folder,       | "        | ......  | 20    |
| Hartford Rounder,    | "        | ......  | 800   |

The above first ten of the said machines were fastened to the floor, or planks nailed to the floor, by lag screws and also belted to the shafting overhead, mostly to the line shaft; A lag screw is a body with a square head on one end and a thread at the other; and these machines were fastened by passing the screws through the holes in the machines made for that purpose and screwing the lags into the floor or plank with a monkey wrench. The line shaft extends east and west and is fastened by lag screws to the stringer which supports the upper floor.

The six last of the machines were fastened to benches by wood screws and belted to the shafting—mostly line shaft—such benches being nailed to the floor. Other of the machinery was placed in the building as follows: The pinking machine and feather edge one screwed to the benches, nailed to the floor, and worked by hand. The Washburn & Hardy Brewster, weighing 150 lbs., is lag-screwed to the floor and is worked by foot power.

The six crispin jacks are screwed to posts and nailed to the benches which are nailed to the floor.

The machinery was all placed in the building under Day's direction, and was put in the building for the purpose of manufacturing shoes, and was all used for that purpose a little, and increases the value of the plant. It was, as the witnesses testified, essential to the plant as placed there, and was especially adapted for manufacturing shoes, and necessary for that purpose, though shoes may be manufactured without it. When the machinery was placed in the building it was not with the purpose of taking it out.

The machines were made of iron and cast holes were made in the legs or bottom parts thereof for the lag or other screws.   On most of them belt wheels were placed so that they could be attached by belting to the shafting.

The appellant knew for what purpose the machines were sold and that they would be attached to the factory building in the manner in which they were.   The machinery was sold to Day on thirty, sixty and ninety days time, with a proviso that the machinery should remain their property until paid for.

Day failed, and the manufacturing establishment became insolvent.   On the 31st October, 1891, Day gave a check on the Farmers Bank to appellants to pay for the machinery, but it was not paid for want of funds and was returned to appellants dishonored.   On the 23d November, same year, appellants demanded a return of the machinery.

The appellants on the 24th November started their replevin suit against Day for the machinery, and the sheriff attempted to take it on the writ and deliver it to appellants, but it was not removed from the building.   On the 23d day of November, 1891, Day gave to appellee a trust deed on the lots, describing the lots by number without any reference in the instrument to the machinery.

On the 9th, 14th and 15th of December, 1891, several parties obtained judgments against Day and executions were issued thereon and delivered to the sheriff.

The appellee brought a suit in chancery in the Circuit Court claiming a lien on the lots and machinery as fixtures by virtue of its trust deed.   The sheriff, Cox, and several other defendants, were made party respondents as well as the appellants.   Several answers and cross-bills were filed, some of whom claimed a mechanic's lien, but as far as the questions involved here are concerned we need not notice any of them.

The case was heard and a decree entered against the appellants, sustaining the various liens, and it was ordered that the receiver sell all the property, real and personal, including the machines claimed by appellants, except certain unat-

tached machines and property involved in the replevin suit, which were ordered to be delivered to appellants. From this decree appellants appealed to this court.

Afterward it was agreed that the sale might proceed, notwithstanding the appeal, and that the receiver keep out of the proceeds the sum of $1,800, and that if the decree be reversed and appellants entitled to the possession of the machines enumerated in the decree and held to be part of the real estate, the court should ascertain and determine their value and the appellants be paid such an amount out of said sum as the machines were worth, it being intended that the $1,800 should take the place of the machines, as far as their value went.

Messrs. ALDRICH, PAYNE & DEFREES, for appellants.

Messrs. OWEN G. LOVEJOY, RICHARD M. SKINNER and GEORGE S. SKINNER, for appellees.

MR. JUSTICE LACEY. The sole question for our decision in this case is whether or not the machinery in question placed in and attached to the manufacturing building in the manner shown by the testimony and under all the circumstances became fixtures to the real estate and passed by the trust deed of Day to appellee. The question is one not entirely free from doubt and the authorities, as might be expected, are not altogether in harmony.

In consideration of the case we will first notice the nature of appellants' contract with Day in regard to the sale of the machinery. They undertook to retain title in themselves, secret to all the world save the parties to the contract, and thereby give an appearance of ownership in Day to the machines when in fact he had none. Contracts of this nature are disapproved of by courts and judges and held void as to third parties.

The Supreme Court of this State has often passed on the question so holding them void as to third parties. Jennings v. Gage, 13 Ill. 610; Brundage v. Camp, 21 Ill. 330; Murch

v. Wright, 46 Ill. 488; Harvey v. R. I. Locomotive Works, 93 U. S. 664; Chickering v. Bastress, 130 Ill. 206. But in addition to this, appellants allowed the machines to be attached to the freehold and used in the building as a part of the plant, and this, too, under a deed to Day that required the machinery not to be removed within five years. We think, under those circumstances, the appellants in equity ought to be held as having waived the secret lien and consented to the machinery being used as a part of the manufacturing plant. If this should not be so, then Day would be placed in an appearance of affluence by which he could procure credit and deceive the public.

The intention of the parties has much to do with the question whether certain attachments to realty are to be regarded as fixtures that will pass with the land, and this intention is manifested by acts. Arnold v. Crowder, 81 Ill. 56. In speaking on this subject of intention the Supreme Court of Massachusetts in ——— v. Taunton Savings Bank, 23 N. E. Rep. 330, held the following language:

"The tendency of modern cases is to make this a question of what the intention was with which the machine was placed in place * * * Only it should be noted that the intention to be sought is not the undisclosed purpose of the actor, but the intention implied and manifest by his act. It is an intention which settles not merely his own rights, but the rights of others who have or may acquire interest in the property. They can not know his secret purpose; and their rights depend, not upon that, but upon the inferences to be drawn from that which is external and visible." We cite also Calumet Iron & Steel Co. v. Lathrop, 36 Ill. App. 249; First National Bank v. Adam, 138 Ill. 483; 28 N. E. Rep. 955; decided October 31, 1891, by the Supreme Court of Illinois.

It will be observed that appellants did not place the machinery in the factory building, but it was done by Day, who undoubtedly placed it there with the intention of its becoming a part of the factory, and this was at least impliedly assented to by appellants.

The fact, if it be a fact, that appellants claimed these ma-

chines before the taking the real estate mortgage by appellee can make no difference. Having allowed the machines to be placed in the building, appellants ought not to be allowed to change their attitude when creditors were pressing for security and payment. It is not necessary to consider the question of whether appellants rescinded the contract with Day by tendering to him the check or draft he gave them in payment for the machinery.

Feeling satisfied that justice has been done in the case we will not attempt to review the authorities cited with a view to reconciling them. The decree of the court below is therefore affirmed.

*Decree affirmed.*