# CASES

# SUPREME JUDICIAL COURT,

---

## Joseph M. Barry *versus* William Palmer.

When by the terms of the contract the plaintiff was to deliver paper hangings, conforming to a memorandum annexed, " on board a Gardiner steamboat, at Boston, on her first trip in April then next," for which the defendant was to pay in paper of a certain quality and price, to be shipped " at Gardiner," on the receipt of the paper hangings for Boston, — upon the shipments by each party according to the contract — the goods sent are at the risk of the party for whose use they are thus shipped.

The stipulation in the contract, that the plaintiff was to be paid on the receipt of the goods at Gardiner, determined only the time of payment but did not impose the risk of transit upon the plaintiff.

If the goods were not sent all at one time, nor in season as required by the contract, but were received in different parcels as sent — and were paid for — it is a waiver of that part of the agreement by which the entire quantity was to be shipped at one time — and by a fixed day.

This was an action of assumpsit for certain paper hangings. The general issue was pleaded.

The following contracts were introduced. The schedules referred to are omitted. " The within memorandum of paper is to be delivered on board the steamboat at Boston, the first trip in April, 1838, and are to be paid for in paper, at 11 cts. per lb., to weigh 27 lbs. to the ream in the long roll, and shipped for Boston after receiving the paper hangings — the with-

in memorandum can be altered any time before the first of January next.					Joseph M. Barry.

"Gardiner, 14th Dec. 1837."

"The above paper hangings are to be delivered on board a Gardiner steamboat the first trip in April, 1838, and are to be paid for in paper at 11 c. lb., to weigh 27 lbs. to the ream. It is to be made in the long roll and shipped for Boston after the receipt of the paper hangings. The above can be altered any time before the first of February next.					Wm. Palmer.

"Gardiner, Dec. 14, 1837."

The plaintiff introduced certain depositions from which it appeared that the hangings in controversy were sent the latter part of May, 1838, from Worcester by the rail road to Boston, and were then shipped on board the steamer New England for Gardiner, and were lost on the passage by the wreck of the steamer.

The plaintiff introduced the following letter from the defendant.

"Gardiner, April 17, 1838.

"Mr. Barry, sir, I expected by last boat the lot of paper hangings which you agreed to send, but I have not received them. Will you inform me when you will send them — the paper you are to have is ready.

"Yours,		William Palmer."

The plaintiff also read a letter of the defendant, dated June 11th 1838, in which he wrote — that he would send paper hangings any time he might be directed — and that he wished the plaintiff to send 20 rolls of his No. 30, from Boston by the steamer Huntress — also a letter dated July 20, 1838, in which he advised him, of having sent three boxes of paper according to order, which made the amount due the plaintiff for hangings which had been received.

The defendant introduced a letter from the plaintiff, dated Sept. 25, 1838, in which he advised the defendant, he should the next week send the defendant's order of paper hangings, but should make his delivery in Boston on board the steamboat

unless ordered to send them some other way, as he should not be holden for them after they were put on board of the boat or packet.

He then called Abraham Jordan, who testified, subject to all legal objection to his testimony, that after the contract was signed, the plaintiff told the defendant that he wanted the latter to exchange with him — that if he had had time he should have written the contract differently — that it was impossible for the defendant to make selections from the samples he had exhibited — that he had others at his factory — that the paper should be sent to Gardiner, and that after the defendant had inspected it and had selected such patterns as he was satisfied with, he might return the rest and pay for such only as he retained — and that to these propositions the defendant assented.

It appeared that all the paper sent, prior to that in controversy, and also a quantity sent in the month of June, 1838, had been received and paid for by the defendant. It further appeared that a short time prior to this suit, the plaintiff demanded payment of the defendant for the paper in dispute, which was refused. By comparing the prices and numbers which indicated to purchasers the patterns and quality of the paper, it appeared that some was sent, found on the plaintiff's schedule, which was not found on the defendant's counterpart — that some was sent which was not found in either schedule and that all included in the schedules had not been sent.

Upon this evidence a nonsuit was ordered by WESTON C. J. it being agreed that, if in the opinion of the Court the action is maintained by competent evidence, the nonsuit shall be set aside, a default entered, and such judgment rendered thereon as the Court may order, otherwise the nonsuit is to be confirmed.

*Evans* and *Emmons,* for the plaintiff. By the terms of the contract signed by the defendant, he agreed to purchase a certain quantity of paper hangings — the samples of which had been exhibited to him, — the paper was to be delivered on board a Gardiner steamboat, the first trip in April, 1838. The place

of delivery is fixed — " a Gardiner steamboat" in " Boston." This contract, if not fulfilled to the letter, has been fulfilled to the satisfaction of the defendant. None was sent the first trip of the boat in 1838, but the defendant took no advantage of this omission, he waived strict compliance — received and paid for different portions as they were sent at different times. These facts amount to an unequivocal waiver so far as time is concerned. *George* v. *Coombs,* 7 Greenl. 394; *Wyer* v. *Noble,* 7 Greenl. 342; *Brinley* v. *Tibbets,* 7 Greenl. 70; *Hayden* v. *Madison,* 7 Greenl. 176.

Further, the contract ceased to be entire. It became an agreement, not for a certain quantity — all to be delivered at one time, but for a given amount to be received in parcels as might suit the convenience of the sender. *Bowker* v. *Hoyt,* 18 Pick. 555; *Oxendale* v. *Witherell,* 9 B. &. C. 386: *Champion* v. *Short,* 1 Camp. 53; *Shaw* v. *Badger,* 12 S. &. R. 275. The paper hangings were thenceforward at the risk of the defendant — the freight was to be paid for by him. The plaintiff had nothing more to do. The sale was complete. No one but the defendant could interfere or control the paper. The delivery was perfect, so far as it ever can be where goods are sent by ship agreeably to order. They were never received, the boat having sunk on its passage. The loss is the loss of the defendant.

The expression in the contract that the papers are not to be paid for until after their receipt — relates only to the *time* of payment. It is not a condition to be first performed on the part of the plaintiff. The liability attached on the delivery in Boston. *Swift* v. *Clark,* 15 Mass. R. 173; *Locke* v. *Swan,* 13 Mass. R. 79. Each had discharged his part of the contract when they had severally shipped the articles to be sent, at Boston and Gardiner.

The evidence of Jordan, tending to vary a written contract, was clearly inadmissible.

The action is properly brought. *Indebitatus assumpsit* will lie when the order has been executed and nothing remains to be done but to make payment. *Stark* v. *Parker,* 2 Pick. 73;

*Burn* v. *Miller*, 4 Taunt. 744. If necessary, the contract may be amended. *Thorp* v. *White & al.* 13 Johns. 53. The defendant has admitted the contract by bringing 'money into Court. *Huntington* v. *American Bank*, 6 Pick. 340.

*F. Allen*, for the defendant. The 'action is not maintainable. The plaintiff sues as on a contract for money — but such was not the fact. It was a contract of barter. The payment was not to be made in money. The plaintiff then should have declared on his contract and averred a readiness to perform on his part. *Preston* v. *Wright*, Doug. 665; *Rollins* v. *Otis*, 1 Pick. 368; *Goulding* v. *Skinner*, 1 Pick. 162; *Cunningham* v. *Kimball*, 7 Mass. R. 65.

There is then a variance between the declaration and the proof. *Nourse* v. *Snow*, 6 Greenl. 208; *Penny* v. *Porter*, 2 East, 2; *White* v. *Wilson*, 2 B. & P. 116; 2 Stark. Ev. 83, Yelv. R. 57, *n.*

By the terms of the contract the place of delivery was to be at Gardiner and not Boston. It was to be paid for after it was received. If a delivery at Boston was sufficient the plaintiff might have sued and attached forthwith — and the defendant would have been deprived of the right to pay in paper. However that might be originally, the contract was modified by the subsequent parol agreement testified to by Jordan; the evidence of which was legally admissible. *Low* v. *Treadwell*, 3 Fairf. 441; *Kealing* v. *Price*, 1 Johns. Cases, 22; *Radcliff* v. *Pemberton*, 1 Esp. 35; *Erwin* v. *Saunders*, 1 Cow. 249; *Fleming* v. *Gilbert*, 3 Johns. 528; Chitty on Contracts, 27.

The paper hangings here have never come into the possession of the defendant. The plaintiff therefore is bound to show a strict performance. It differs from the case where the article has been received — and a strict performance been waived.

The opinion of the Court was delivered by

WESTON C. J. — The principal question, in controversy between the parties, is, at whose risk were the paper hangings, shipped by the plaintiff on board the steamer New-England, in May, 1838. This will depend upon the contract, as origin-

ally made, or as subsequently modified. The written agreement is in two parts, by which the plaintiff and defendant, respectively, became possessed of the written evidence of what the other party had assumed. From both, taken together, it appears, that the plaintiff was to deliver paper hangings, conforming to a memorandum annexed, on board a Gardiner steamboat at Boston on her first trip, in April, 1838, for which the defendant was to pay in paper of a certain quality and price, to be shipped at Gardiner for Boston, on the receipt of the paper hangings. When the plaintiff shipped the paper hangings at Boston, and the defendant the unstained paper at Gardiner, according to the contract, each would have done, what he stipulated to perform; and the paper stained and unstained would thereupon be at the risk of the party, for whose use it was thus shipped. The subsequent parol agreement, properly understood, must be regarded as having reference to other patterns, than those to be found in the memorandum, which was made a part of the contract. Such as there appear had been selected by the defendant, and he had contracted to receive and pay for them. By the parol agreement, such as he had not seen, if forwarded, he was to receive or to return, at *his election.*

The defendant was to pay, on the receipt of the paper hangings at Gardiner. This did not impose upon the plaintiff the risk of their transit from Boston. It only determined the time, when the defendant was to make payment. The plaintiff failed to perform on his part, in two particulars. He did not send the paper at one time, as he had agreed; nor did he send it in April, on the steamer's first trip, according to the contract. But his rights will remain unaffected, if performance in these respects was waived or excused by the defendant. And this, in our judgment, is fairly deducible from the evidence. The plaintiff having failed to send on the steamer's first trip, the defendant, in his letter to the plaintiff, of April 17th, 1838, desires to be informed when he will send the paper hangings, adding, " the paper you are to have is ready." This clearly waives strict performance, and manifests a willingness to receive the hangings subsequently, that is, as must be understood, if

shipped within a reasonable time. That the shipment in question would have been satisfactory in point of time, is apparent from the fact, that the defendant actually received and paid for hangings, shipped the following month. And the correspondence and acts of the parties are evidence, that the defendant waived his right to require, that the entire quantity, he had agreed to purchase, should be shipped at one time, and that on the first trip of the steamer, in the month of April. It results, that such parts of the hangings lost, as conformed to the memorandum, which is part of the contract, were at the risk of the defendant.

The defendant should have paid, by shipping his unstained paper, in a reasonable time, after the hangings would have been received, if the steamer had arrived in safety. This he has not done, and has refused payment generally upon demand, prior to the suit. It is objected, that whatever may be the merits of the plaintiff's claim, he should have declared specially. There may be weight in this position. But the whole cause has been tried, with reference to the contract and the subsequent facts. The account annexed disclosed in detail the subject matter of the suit. A special count for the same cause, might have been added, under leave to amend. The grounds taken in defence, upon the merits have been fully considered. It is not too late to allow the amendment; and the justice of the case requires it. The plaintiff accordingly has leave to file a special count, upon the contract. This being done, the nonsuit is to be set aside, and a default entered.