## RODEE and others *vs.* WADE.

The plaintiffs, by an oral agreement with the defendant, agreed to purchase of him 2300 bushels of wheat, then in store in an elevator, and paid him the stipulated price therefor. The wheat was in bulk, mixed with a larger quan-tity belonging to the defendant and others. It stood credited to the defend-ant, with other wheat, on the books of the keeper of the elevator. No executed bill of sale was given to the plaintiffs, nor was any order for that grain given to them, on the keeper of the elevator. The quantity sold was not separated from the mass in store, nor was there any attempt at a manual delivery. In an action to recover the value of 1600 bushels of the wheat destroyed by fire, in the elevator, before it was removed by the plaintiffs, *it was held* that it was a question as to the *intent* of the parties, in respect to the title passing to the vendees; and the jury having found, upon conflicting evidence, that the title did not pass, but that the wheat remained the property of the vendor and at his risk; it was further *held* that the transaction operated as a contract to sell, and was not a transfer of the title; and that the plain-tiffs were entitled to recover the value of wheat remaining undelivered and destroyed by the fire.

It was understood between the parties, at the time of making the contract of sale, that the defendant might use, or borrow, a portion or all of the wheat, on condition that he would restore an equivalent, in amount and value. This right he exercised, to the extent of appropriating 2100 bushels of wheat— 700 of which he afterwards restored. *Held* that if the above conclusion was erroneous, and the title to the wheat *did* in fact pass to the plaintiffs, on the sale, the subsequent acts of the defendant operated as an appropriation of the 1400 bushels of wheat which he had so borrowed and had not restored; and a recovery for the value of that quantity was sustained.

APPEAL from a judgment entered upon the verdict of a jury, after a trial at the circuit. The plaintiffs alleged

in their complaint that they were partners in trade, doing business at Canton, St. Lawrence county, under the style of H. Rodee & Co. That on the 5th day of July, 1864, at Ogdensburgh, in said county, the plaintiffs purchased of James Wade, the defendant, and the defendant duly sold to the plaintiffs, as such firm, 2300 bushels of wheat, known as Amber Milwaukee wheat, to arrive at Ogdensburgh, and which the defendant stated was coming by a propeller then on its way from the lakes to Ogdensburgh, and to be delivered by the defendant to the plaintiffs at Ogdensburgh, at and for the price of $2.50 per bushel. That said propeller arrived at Ogdensburgh on or about the 12th day of July, 1864, with a cargo of wheat belonging to the defendant, containing more than the amount so as aforesaid purchased by the plaintiffs of the defendant, and was unladen, and the cargo of wheat placed by the defendant in a public warehouse at Ogdensburgh aforesaid. That on the 14th day of July, 1864, the plaintiffs paid to the defendant, and the defendant received of said plaintiffs, on account of the purchase price of said wheat, the sum of $3700, and on the 22d day of said July the further sum of $1000 was paid by the plaintiffs and received by the defendant on account of the purchase price of said wheat. That the purchase price of said wheat amounted to the sum of $5750. That on the 30th day of December, 1864, the plaintiffs tendered to the defendant the sum of $1093.48, lawful money of the United States, in full for the balance of the purchase price of said wheat and interest thereon, as ascertained and agreed upon between the plaintiffs and the defendant. That the defendant refused to receive said sum so tendered and to deliver said wheat; that said money was thereupon deposited in and still remains in the Oswegatchie Bank at Ogdensburgh, subject to the order of the defendant, of all which said defendant then and there had due notice. That on or about the 10th day of August, 1864, the defendant delivered to the plaintiffs at Ogdensburgh, aforesaid, three hundred and

Rodee *v.* Wade.

fifty bushels of wheat to apply upon the said two thousand three hundred bushels as aforesaid, purchased by the plaintiffs of the defendant, and on the 27th day of December the further quantity of three hundred and fifty bushels for the like purpose, leaving a balance of one thousand six hundred bushels of said wheat so purchased wholly undelivered. That said wheat was due and deliverable to the plaintiffs on the 20th day of December, 1864, and a delivery thereof on that day was duly demanded by said plaintiffs of the defendant. That the defendant has wholly neglected and refused, and still doth neglect and refuse, to deliver said one thousand six hundred bushels of wheat, or any part thereof, to the plaintiffs, although often requested so to do. That the market value of said wheat at Ogdensburgh, on said 20th day of December, 1864, was $2.65 cents per bushel, and the total value of said one thousand six hundred bushels on that day was $4240. That the plaintiffs, by reason of the failure and refusal of the defendant so to deliver said wheat, have sustained damages to that amount, and the defendant is indebted to the plaintiffs, by reason of such failure and refusal to deliver said wheat, in the sum of $4240, and interest thereon from December 20, 1864. For a further and other cause of action against the defendant, the plaintiffs averred that they are, and were at the time of the occurring of the transaction hereinafter set forth, partners in trade. That on or about the 14th day of July, 1864, at the village of Ogdensburgh, the defendant borrowed of the plaintiffs, and the plaintiffs loaned to said defendant, at his request, a large quantity of wheat, known as Amber Milwaukee wheat, to wit, twenty-three hundred bushels of said wheat, and the defendant, in consideration thereof, then and there undertook, promised and agreed with the plaintiffs, to return to said plaintiffs on demand the same quantity and quality of wheat. That on or about the 8th day of August, 1864, the defendant returned to the plaintiffs, to apply upon the wheat so borrowed, three hundred and fifty bushels, leaving a balance unreturned of nineteen hun-

dred and fifty bushels of wheat. That on the 20th day of December, 1864, the plaintiffs, at Ogdensburgh aforesaid, duly demanded of the defendant said wheat. That the defendant thereupon returned the further quantity of three hundred and fifty bushels of wheat, leaving sixteen hundred bushels thereof undelivered, and which the defendant wholly refused to return or deliver or account for to the plaintiffs, and the same remains wholly undelivered and unaccounted for by the defendant. That said wheat at the time of its being so demanded, as aforesaid, was worth the sum of $2.65 per bushel, and said sixteen hundred bushels was worth the sum of $4240, and that the defendant by his refusal so to return or deliver said wheat became thereby, and still is, justly indebted to the plaintiffs in that amount. Wherefore, the plaintiffs demanded judgment against the defendant for $4240, with interest and costs.

The answer was a general denial.

The action was tried at the St. Lawrence circuit in February, 1866, before Justice JAMES and a jury. The evidence being all heard, and the attorneys for the respective parties having summed up the case, his honor, the judge, charged the jury, submitting to them the following questions, to wit:

*First.* Was it understood between the parties on the 14th of July, 1864, that the wheat, the subject of purchase, was then in the elevator at Ogdensburgh?

*Second.* Was it understood between the parties at the time, that the wheat was at the plaintiffs' risk?

*Third.* Did the defendant have the right to use or borrow any of said wheat to supply his customers?

*Fourth.* Did the defendant make an order for four car loads of wheat (1400 bushels) to Brookins on the day before the fire, and deliver such order for execution to the keeper of the grain elevator?

*Fifth.* What was the value of the wheat, per bushel?

Thereupon the jury retired, and after deliberation, the said

Rodee *v.* Wade.

jury returned into court and delivered their verdict, whereby they found as follows, to wit:

To the first question they answer, yes.

To the second question they answer, no.

To the third question they answer, yes.

To the fourth question they answer, yes.

To the fifth question, they find the value of the wheat $2.50 per bushel.

They find for the plaintiffs $4448.77.

The court reserved the case for further consideration, under section 261 of the Code, and subsequently delivered the following opinion:

"JAMES, J. This action came on to be tried before the court and jury at a circuit court, held at Canton, on the third Tuesday of February, 1866, at which time certain facts were found by the jury and a general verdict rendered for the plaintiffs; whereupon the cause was reserved for further consideration.

The undisputed evidence in the case, and the findings of the jury, establish the facts in the case to be these: The defendant was a grain dealer, doing business at the Northern railroad depot in Ogdensburgh. Grain arriving at such depot from the west on ship board was deposited in bulk in a large wheat house belonging to said railroad company, and receipts given the various owners for their respective quantities; and when sold, the owners gave an order on the warehouse for the quantity sold, and upon its presentation and acceptance the quantity was delivered, or held, as directed by the vendee.

The plaintiffs, who reside eighteen miles distant from Ogdensburgh, applied to the defendant on the 5th of July, 1864, to purchase wheat, and the defendant made them a verbal offer of two thousand three hundred bushels of Milwaukee Amber, to arrive on the 14th of July. After the wheat had arrived and been stored in said wheat house, the plaintiffs purchased of said defendant said two thousand

three hundred bushels of wheat, at $2.50 per bushel, amounting to $5750, a bill of which was made out and handed the plaintiffs, but not signed, and the plaintiffs paid $1700, in cash, gave their note at thirty days for $2000, with interest, and were given a short credit for the balance. · · Both parties at this time understood the wheat was in said wheat house, but no order for the wheat was given to the plaintiffs by the defendant on the wheat house, and no further action in regard to the same taken by the plaintiffs.

By a subsequent agreement at the time of sale, the defendant had the right to use or borrow of said wheat, to supply his customers, the whole or any part thereof, and thereafter replace the same with other wheat of like quality. On the 14th July, the defendant sold to Doty & Phillips three hundred and fifty bushels and gave them an order on the wheat house for that quantity, out of the wheat sold to the plaintiffs, which order was accepted by the bailee and by him sent off the next day. On the 22d of July, the defendant made another order on said bailee for three hundred and fifty bushels more of said wheat, to Fosgate, which order was accepted and the wheat sent off on the 25th. On the 27th of July, the defendant made a further order for fourteen hundred bushels more of said wheat to Brookins, which order was presented to the said bailee and accepted, but before the said fourteen hundred bushels of wheat were sent from the wheat house, and on the 28th of July, said building, and all its contents, were destroyed by fire.

The transaction of the 14th of July constituted a sale of the twenty-three hundred bushels of wheat. The cash payment took it out of the statute of frauds ; and the property being at the time in the storehouse and so known and understood by both parties, the title to it passed to the plaintiffs, without any other or further act, or any manual delivery, (7 *East,* 558 ; 6 *Barn. & Cress.* 362 ;) and where the title passes, though the possession remains with the vendor, the property is at the risk of the vendee. (6 *Barn.*

Rodee *v.* Wade.

& *Cress.* 362.   13 *Pick.* 183.   7 *Dana,* 61.   2 *Kent's Com.*
492.   1 *Pars. on Cont.* 440.   25 *N. Y. Rep.* 278, 520, 524.)
Therefore, notwithstanding the finding of the jury, the wheat
was at the plaintiffs' risk from the time of purchase until its
loss, unless the title to the same, or some part of it, was
changed by the subsequent acts of the defendant.

By the agreement between the parties at the time of sale,
the defendant had the right to use the whole or any part
of said wheat to supply customers to whom he usually
sold.   He saw fit to exercise that right; he sold three par-
cels; the first two were received and removed, but the latter
parcel was destroyed before removal; the former were paid
for by the defendant, and the question is now presented, as
between the plaintiffs and defendant, which shall lose this
latter parcel.

In determining this question, the exact fact must not be
lost sight of.   It must be borne in mind that the wheat
was in the wheat house of a bailee, in bulk; that, notwith-
standing the legal title to it had passed to the plaintiffs, it
remained there in the defendant's name, the bailee having
no notice of any sale to the plaintiffs, and therefore the de-
fendant's order on the bailee required no indorsement from
the plaintiffs to authorize the bailee to accept it; and the
plaintiffs' permission to the defendant to sell and replace said
wheat, authorized him to make an order on the bailee for
delivery to a purchaser.

Therefore, the sale to Brookins, the delivery of an order
on the bailee, and its acceptance—from the moment of its
acceptance—passed to Brookins a perfect title to the wheat,
valid as against the plaintiffs.   To repeat: when the defend-
ant had sold Brookins fourteen hundred bushels of wheat
and elected to exercise his right of supplying it from the lot
sold to the plaintiffs, and made an order for it on the bailee,
which had been presented to and accepted by the bailee, the
title to that wheat passed to Brookins; it was his property,

and at his risk; it was no longer the property of either the plaintiffs or the defendant.

Suppose this wheat had not been burned; and, after the 27th of July, but before the removal, the defendant had failed, can there be a doubt that Brookins would have held said wheat as against the plaintiff? I think not; and if not, the defendant, with permission from the plaintiffs, took fourteen hundred bushels of their wheat, sold it to Brookins, got his pay for it, passed a good title to it, and there is no reason in law or morals why the defendant should not replace, or pay for, the quantity thus taken.

The plaintiffs, therefore, are entitled to hold their verdict, and enter judgment for the value of the fourteen hundred bushels, at $2.50 per bushel, with interest from July 14, 1864, to February 21, 1865.

The other two hundred bushels being the property of the plaintiffs, was at their risk, and not having been interefered with by the defendant, they have no claim against him therefor."

Judgment having been entered for the plaintiffs, in accordance with the above opinion, the defendant appealed to the general term.

*Wm. C. Brown,* for the appellant.

*Sawyer & Russell,* for the respondents.

*By the Court,* BOCKES, J. The plaintiffs contracted with the defendant for the purchase of 2300 bushels of wheat, portion of a larger quantity in store at Ogdensburgh, and paid him therefor, part at the time of purchase, and the balance at a subsequent period. The contract of purchase was consummated on the 14th July, 1864, and on the 28th of the same month 1600 bushels of the wheat contracted for were destroyed by fire—the balance of the 2300 bushels having been previously removed. There was no actual delivery of

Rodee *v.* Wade.

the wheat at, or subsequent to, the time of sale ; nor was it separated from the mass in store. Subsequent to the sale the defendant used, or as he claimed, " borrowed," 700 bushels of the wheat, for which he returned an equivalent to the plaintiffs. The action was brought to recover for the 1600 bushels destroyed by the fire.

The first question presented by the case is in regard to the effect of the transaction between the parties. Was it a bargain and sale, by which the title to the property passed to, and vested in, the plaintiff, or was it an executory contract of sale, merely ? If the latter, the property remained the property of the defendant, at his risk ; and having received full pay therefor, he was bound to deliver it on the plaintiffs' demand, or answer for its value ; and its accidental destruction by fire, before delivery, could afford no defense against the plaintiffs' claim. It was insisted by the plaintiffs, on the trial, that such was their condition. They insisted that the sale was not complete to pass the title, inasmuch as the wheat was not delivered, pointed out or placed under their control ; but remained in bulk in the hands of a bailee, where it had been placed by the defendant, mixed with a larger quantity belonging to the defendant and others. With a view to determine the point whether or not the title passed to the plaintiffs, the judge, at the trial, submitted to the jury the following question : " Was it understood between the parties, at the time, that the wheat was at the plaintiffs' risk ?" The jury answered, " No." If this question was a proper one for the jury, it stands determined by their verdict, that the title did not pass, and that the property remained the property of the defendant at the time of the fire. In this view the plaintiffs were entitled to recover the amount specified in the general verdict, being the value of the 1600 bushels not delivered by the defendant. This brings us to an examination of the evidence laid before the jury for their consideration. Does this evidence show conclusively that the title did or did not pass ? Or was this a question for the jury, on the evidence ?

Rodee *v.* Wade.

It was proved that the plaintiffs, by an oral agreement with the defendant, agreed to purchase of him 2300 bushels of wheat, then in store in an elevator, and paid him the stipulated price therefor. The wheat was in bulk, mixed with a larger quantity belonging to the defendant and others. It stood credited to the defendant, with other wheat, on the books of the keeper of the elevator. No executed bill of sale was given to the plaintiffs, nor was any order for the grain given them on the keeper of the elevator. The quantity sold was not separated from the mass in store, nor was there any attempt at a manual delivery. It was understood that the defendant might use or borrow a portion or all of the wheat, on condition that he would restore an equivalent in amount and quality ; and he did so borrow 700 bushels, prior to the fire, which he restored to the plaintiffs, according to the understanding. There was, too, a serious conflict of evidence on the point whether it was *expressly stipulated* by the parties, at the time of the purchase, that the grain should thereafter remain at the plaintiffs' risk. The defendant testified that it was so expressly agreed, and he introduced evidence confirmatory of his testimony. On the other hand, two of the plaintiffs gave this assertion a flat denial. Under this state of the evidence it was proper, in my judgment, to submit to the jury the question whether the wheat was thereafter to remain at the plaintiffs' risk. The jury found that it was not to remain at the plaintiffs' risk ; in other language, that the title did not pass. In support of the verdict, cases are cited wherein it is held that, in order to pass the title to the vendee, there must be an actual delivery ; or the property must be so designated that possession may be taken without any further act on the part of the vendor. These decisions stand as sound law ; nor are they at all in conflict with those cases wherein it is decided that the title may pass to the vendee, if such be the intention of the parties, in case of a sale of a specified quantity, not separated from a mass in which it is included. In *Whitehouse* v. *Frost,* (12 ~~Foster.~~ *East*

Rodee v. Wade.

614,) the vendors sold ten tons of oil out of forty tons secured in one cistern. There was no measurement or actual delivery. It was held that the title passed. This is one of several cases referred to in the opinion ·in *Kimberly* v. *Patchin*, (19 *N. Y. Rep.* 330,) wherein the Court of Appeals decided that upon a sale of a specified quantity of grain, its separation from a mass indistinguishable in quality or value, in which it is included, is not necessary to pass the title, when the intention to do so is otherwise clearly manifested. (*See also Olyphant* v. *Baker*, 5 *Denio*, 379, *and cases cited.*) The conclusion of the Court of Appeals in *Kimberly* v. *Patchin*, as expressed in the opinion (*p.* 338) was, that upon a simple bill of sale of gallons of oil or bushels of wheat, mixed with an ascertained and defined larger quantity, it may or may not be considered that the parties intended that the portion sold should be measured before the purchaser became invested with the title. So it seems that in such case the title may or may not pass, according to the intent of the parties. In the case in hand the sale was complete, except that there was no actual delivery or separation of the property sold, from the mass in which it was included. Now it became necessary to inquire into the intent of the parties ; whether they agreed or understood that the title passed, or remained in the defendant, the vendor. Proof was given by both parties, bearing on the point, raising a conflict of evidence. It therefore became a question for the jury to settle, and they found that the title did not pass, but the property remained the property of the defendant. Nor can it be said that their finding is either unsupported by or contrary to evidence. Therefore, according to the verdict of the jury, the transaction operated as a contract to sell, and was not a transfer of title. They found that the wheat remained at the defendant's risk. Giving effect to the verdict, the plaintiffs were entitled to recover $4448.77, the value of 1600 bushels, being the quantity undelivered on the contract of sale. The judge, however, permitted a recovery for only 1400 bushels, under

the view of the facts and law adopted by him.    This was an error in favor of the defendant, of which the latter can not complain ; and the plaintiffs have acquiesced by omitting to take exception or appeal.    My conclusion, above stated, necessarily leads to an affirmance of the judgment.

But if wrong in such conclusion — if the title to the wheat in fact passed to the plaintiffs on the sale, July 14th — it must follow, I think, that the subsequent acts of the defendant operated as an appropriation of the 1400 bushels for which a recovery was allowed.    The defendant at the time of the sale secured permission to use or borrow a portion of the wheat, and he exercised his right to the extent of appropriating 2100 bushels.    As regards the 700 bushels, no question is made ; nor can there be, I think, in regard to the 1400 bushels.    All that was needful to transfer the title from the plaintiffs had been performed.    In this view of the case, I deem it unnecessary to do more than refer to the opinion of the learned judge before whom the trial was conducted, and who directed the judgment.    On the theory adopted by him, the cases he cites fully sustain his conclusion.

The judgment must be affirmed.

[St. Lawrence General Term, October 2, 1866.    *Bockes, James, Rosekrans* and *Potter*, Justices.]