GEORGE WARREN & another *vs.* WESTON F. MILLIKEN & another.

A grain elevator company holds grain stored therein, as agents for the owners of the grain.

A transfer of an elevator order, with notice thereof to the elevator company, and a partial delivery of grain under such transferred order, is sufficient to transfer the property in the whole.

Where the defendants, being holders of such an order, permitted the drawers to transfer it to the plaintiffs for value, the defendants are estopped to claim title adversely to the plaintiffs.

ON REPORT.

TROVER for six hundred and seventy-two bushels of corn.

The case is sufficiently stated in the opinion.

*J. & E. M. Rand,* for the plaintiffs.

*Shepley & Strout,* for the defendants.

APPLETON, C. J.    This cause is submitted to the court, upon a report of the evidence.    The respective parties were witnesses and differ in regard to some of the facts material to its decision.    They respectively derive title from the firm of Bradley, Coolidge & Rogers; but no member of that firm was called as a witness, though it might reasonably be expected much light might be derived from that source.

The corn in controversy was stored by Bradley, Coolidge & Rogers in the Portland elevator, in common with various parcels of grain belonging to others.    As evidence of their ownership they held what is called an elevator order, which is in these words:

PORTLAND ELEVATOR.

" PORTLAND, Dec. 3, 1866.

No. 1558.

Mr. John McQueen:—Deliver Bradley, C. & Rogers, thirty-one hundred and seventy $\frac{54}{56}$ bushels corn.

JOHN PORTEOUS, per E. "

On the 12th December, before 12 o'clock, Bradley, Coolidge & Rogers delivered this order to the plaintiffs with this indorsement:

"Deliver to D. Brigham & Co.,

B., C. & ROGERS, per Small."

The plaintiffs, under this order, received grain from the elevator on the 12th, 13th, 14th, and 15th December, when the defendants forbade the delivery of any more.

The elevator held the corn as agents for the owners. Before the sale to the plaintiff they held for Bradley, Coolidge & Rogers. After the transfer, notice thereof, and delivery of corn under such transfer, they held the corn for the plaintiffs. The plaintiffs had received a portion under the order. There was all the delivery which, in the nature of the case, there could be. *Hatch* v. *Bayley*, 12 Cush. 27. *Hatch* v. *Lincoln*, 12 Cush. 31. *Cushing* v. *Breed*, 14 Allen, 376. *Gibson* v. *Stevens*, 8 How. 384. The plaintiff, upon these facts, is entitled to recover, as there is no question of a conversion by the defendants.

But the defendants claim under a bill of sale from Bradley, Coolidge & Rogers to them, dated Dec. 10, 1866, and evidence tending to prove a delivery under the same on December 11. The defendant, W. F. Milliken, further testifies that this elevator order, under which the plaintiffs claim, was delivered them on the 11th December, by Bradley, Coolidge & Rogers.

But John B. Babb, one of the plaintiffs, testifies that on the morning of December 12, and before 12 o'clock in the forenoon, he went to the office of Bradley, Coolidge & Rogers; that they and Small, their delivery clerk, and, as he thought, both the Millikens were there; that Bradley, Coolidge & Rogers stood at the desk; that Small was the clerk, who always delivered orders to him for the elevator; that he asked for an elevator order in place of the order they had given him the day before; that they had two elevator orders,—printed orders issued by the elevator company; that he could not tell how

much was due on each; that he gave his order for 2,000 bushels, and took the order under which he claims title,—the order was for 3,170⅚ bushels; that there had been about 1,900 bushels delivered; that there had been nine deliveries indorsed on the order, the last being dated on 11th December; that this order was indorsed and delivered to him in the presence of Bradley, Coolidge & Rogers,— the indorsement thereon was by Small; that one or both of the defendants was present; that he took and carried away the order, and that under the order he received corn from the elevator on the 12th, 13th, 14th, and 15th which was indorsed thereon by the man having charge of the elevator; that on 17th and 18th he went for corn, which was refused, notice having been given by defendants not to deliver any more.

This testimony is not contradicted by the defendants or either of them. They do not deny that they were present as stated by Babb, and that the order in question was thus indorsed and delivered in their presence and without objection on their part. If the defendants had claim to the order, or to the corn to which it related, by delivery on the 11th, they should have objected at the time of its transfer to the plaintiff, who received it in good faith in exchange of a previous order. As they did not object, the inference is irresistible that they did not *then* claim any title to the corn in question. If they did so claim, it was their duty to have objected to the transfer of the order and to have notified the parties, who were negotiating, of their rights. The defendants say the order was in their hands on 11th December. As it was in the hands of Bradley, Coolidge & Rogers on 12th December, and was transferred by them on that day in the presence of the defendants and without objection, the inference is irresistible that they received it from the defendants and transferred it with their knowledge and assent. If so, they would be estopped from afterwards claiming title adversely to the plaintiff.

It seems that the First National Bank had a bill of sale of the corn in controversy, but there had been no delivery. The assignment of its interest by the bank conveyed no title, as the assigners had none perfected by delivery. Besides, the plaintiffs had a title

prior to the assignment, from the bank to the defendant, which was perfected by delivery on the day of its acquisition.

*Judgment for plaintiffs for* $792.96,
*and interest from Dec.* 18, 1866.

CUTTING, DICKERSON, BARROWS, DANFORTH, and TAPLEY, JJ., concurred.