# WHEELING.

## STATE OF WEST VIRGINIA *v.* HUGHES.

### Submitted June 19, 1883—Decided July 7, 1883.

A partner of a wholesale and retail licensed dealer in spirituous liquors in Wood county visits Taylor county, and there solicits orders on his firm for whisky.    The whisky to fill these orders is shipped in jugs by the Baltimore & Ohio railroad, being deliv-

ered by the firm to an express agent in Wood county for trans-
portation to the purchasers in Taylor county. They receive the
whisky in Taylor county and pay the express-charges, and sub-
sequently, when on a visit to said county of Taylor, this partner
collects in Taylor county of these parties the price, which had
been agreed upon for this whisky. HELD :

> This partner cannot be indicted in Taylor county for selling
> spirituous liquors without license, as on this state of facts the
> sales were made in Wood county, when the jugs of whisky
> were delivered to the express-agent. Until then there was
> only an executory contract for the sale of the whisky, and
> the sale became complete and the property in the whisky
> was transferred to the purchasers when it was delivered to
> the express-agent for transportation, and not when it was
> received of the express-agent by the purchasers. (p. 749.)

GREEN, JUDGE, furnishes the following statement of the
case :

The grand jury of Taylor county on the 27th day of July,
1881, presented Thomas Hughes for unlawfully and without
a State license selling, offering and exposing for sale at retail
in December, 1880, spirituous liquors, wine, porter, ale, beer
and drinks of like nature to Edward L. Gelhousen. The
defendant demurred to the presentment, but it being in
proper form the demurrer was overruled, and the defendant
then moved to quash the presentment, but there being no
ground for quashing the same the court overruled this
motion ; and thereupon the defendant pleaded not guilty, and
issue was joined. On April 8, 1882, this issue was tried and
the jury found a verdict for the defendant, whereupon the
State moved the court to set aside this verdict and grant her
a new trial, which motion the court overruled. The record
states, that the State, during the trial took two bills of excep-
tions, which were signed and made a part of the record. The
first bill of exceptions is as follows:

### BILL OF EXCEPTIONS NO. 1.

" Be it remembered that upon the trial hereof, and before
the jury had retired from the bar of the court to consider of
their verdict, the defendant moved the court to give to the
jury each and all of the following instructions, to-wit:

First.—The jury are instructed that in order to sustain the
indictment in this case, the State must prove beyond *all*

doubt that the liquors charged to be sold in the indictment were sold to E. M. Gelhousen. And the jury are further instructed that it is the duty of the State to prove beyond a reasonable doubt not only that the liquor was sold to E. M. Gelhousen, but that it was sold and delivered to him in Taylor county, West Virginia, by the defendant, Thomas Hughes.

Second.—The jury are instructed that if they believe from the evidence that the defendant was, at the time of the alleged offence, a traveling salesman for Thos. Hughes & Co., merchants doing business in the county of Wood, and that said firm had a license to sell spirituous liquors in Wood county, and that said defendant, as such salesman, came to the county of Taylor soliciting orders for his said firm, and that the said E. M. Gelhousen, named in the indictment, directed the said defendant to send him a quantity of spirituous liquors, and that said defendant took said order and conveyed it to his said firm in Wood county, and that said firm, after inspecting the order, did, in Wood county, fill the same by putting up a package of liquors as ordered by said Gelhousen, and did address the same by card to the said Gelhousen at Grafton, Taylor county, and that said firm of Thomas Hughes & Co. did deliver said package so filled and addressed to the B. & O. R. R. or B. & O. R. Express Co., in the county of Wood, then the jury are further instructed they must find the defendant not guilty.

Third.—The jury are instructed that if they believe from the evidence that the liquors alleged to have been sold in Grafton, Taylor county, were ordered by Gelhousen in Taylor county, ordered from Thos. Hughes & Co., who are licensed liquor dealers in Wood county, through the agent and salesman of said house, and that said liquor was drawn from a large bulk of liquors and separated, marked and delivered in Wood county, addressed to the said Gelhousen in Taylor county, then it is a sale in Wood county, and the jury must find the defendant not guilty."

Fourth.—The jury are instructed that although orders for goods have been received, yet until the goods are separated and set apart and transferred to the purchaser, the sale is incomplete; and if the jury believe from the evidence that the

liquors ordered by Gelhousen in this case were put up by Thos. Hughes & Co. and delivered to the B. & O. Express Company in Wood county, in pursuance of Gelhousen's order given to their salesman in Taylor county, then it was a sale at the county of Wood and the jury must find the defendant not guilty.

Fifth.—The jury are instructed that if they believe from the evidence, that the defendant Thomas Hughes was in fact the salesman of Thomas Hughes & Co. at the time the order was given by Gelhousen to him, and was not soliciting orders for himself, then the fact of whether he was known to the said Gelhousen as such salesman or not is immaterial, and if they believe the said defendant, after receiving said order from said Gelhousen, sent the same or gave it in person to Thos. Hughes & Co. in Wood county, and that said order was accepted by said firm and filled and the goods delivered to a common carrier in Wood county, then it was a sale in Wood county and not in Taylor county, and the jury must find the defendant not guilty.

Sixth.—The jury are instructed that the place of sale of personal property is the point at which goods ordered or purchased are set apart and delivered to the purchaser, or to a common carrier, who for the purpose of delivery represents the purchaser. So, if the jury believe from the evidence, that the liquor ordered by Gelhousen was put up in a package in Wood county, where the firm of Thomas Hughes & Co. were engaged in business at the time, and were delivered by the Baltimore and Ohio Express Company, a common carrier in said Wood county, then and in that event it was a sale in Wood county and not in Taylor county, and the jury must find the defendant not guilty.

To the giving of said instructions, and each of the said instructions, the State, by John T. McGraw, her attorney, objected, which objection the court overruled, and gave the said instructions to the said jury, to which action of the court in giving each of the said instructions, the State by her said attorney, excepted, and now here tenders this her bill of exceptions, which she prays may be signed, sealed and made a part of the record, which is now here accordingly done.

There is then copied into the record brought to this Court

what is called bill of exceptions No. 2. It purports to be a bill of exceptions taken by the State to the overruling of the motion made by it for a new trial, and it certifies all the evidence given at the trial. It proved, that Gelhousen, about August 26, 1880, either by letter addressed to the defendant, Hughes, at Parkersburg, Wood county, West Virginia, where said Hughes resides and is there a partner of the firm of Thomas Hughes & Co., or by seeing said Hughes in Grafton, in Taylor county, West Virginia, ordered him to send to Gelhousen a gallon of whisky. The said Thomas Hughes & Co. having a licence in Wood county, West Virginia, as wholesale and retail liquor dealers, legally selling spirituous liquors in Parkersburg, where their store was. Thomas Hughes, the defendant for the said firm, made periodical trips over the Baltimore and Ohio railroad from Parkersburg as far east as Grafton, in Taylor county, seeking orders on his firm for whisky; if he gets such orders he makes a memorandum of them in an order-book, which he carries with him. This order is copied in an order-book kept by the firm of Thomas Hughes & Co. at their store in Parkersburg, and if these orders are approved by the firm, they are filled by drawing the whisky from a vessel, in which their whisky is kept in bulk in Parkersburg, and the quantity thus ordered being thus separated from the bulk it is delivered to the carrier in Parkersburg, and shipped by the Baltimore and Ohio railroad. The above gallon of whisky ordered of Thomas Hughes was received in this manner by Gelhousen, who resides in Grafton. At some time within twelve months before said presentment Gelhousen met Thomas Hughes in Grafton, in Taylor county, and ordered of him a gallon of whisky, and shortly afterwards he received this whisky in a sealed jug from the agent of the express company in Grafton, and he paid the express charges to this agent of the express company for the transportation, and afterwards meeting Thomas Hughes in Grafton on September 21, 1880, he paid him three dollars and fifty cents for this jug of whisky. Thomas Hughes has no whisky of his own, and sells it only as a member of the firm of Thomas Hughes & Co., and for this firm.

In the record as presented to us this bill of exceptions has

not appended to it the signature of the judge, though on the face of the record entry on the record-book it is stated, that bill of exceptions No. 2 was signed. We have not deemed it necessary to have a *certiorari* to ascertain, whether this absence of this signature is a clerical omission or not. It is probable that it is a clerical error, as neither of the counsel in this case called any attention to this absence of such signature. We deem it unnecessary to delay the decision in this case to ascertain, whether this is a clerical omission or not, as the conclusion which we reach would be the same, whether we regard this bill of exceptions No. 2 as a part of the record or not. Regarding it as a part of the record we consider, that the instructions given by the court were correct, and finding no error in the proceedings in the court below we affirm the judgment. And if we did not consider this bill of exceptions as a part of the record we would necessarily affirm the judgment, as there is nothing in the first bill of exceptions showing its applicability to the case, and of course nothing to show, that the State was prejudiced by these instructions. The State obtained this writ of error.

*J. T. McGraw* and *Attorney-General Watts* for the State.

*Leonard & Caldwell* for defendant in error.

GREEN, JUDGE:

Bill of exceptions No. 2 as this record is presented to us constitutes no part of the record, as the signature of the judge is not appended to it. This was probably the result of a clerical omission, but as the result reached would be the same, whether it were treated as a part of the record or not, we have concluded to treat the absence of the signature to it as a clerical error, this mode of regarding it being most favorable to the plaintiff in error, for the reasons which we have already stated. So considered the point of law presented by the record is, whether our statute-law prohibiting the sale of spirituous liquor without a license, and making such sale a misdemeanor is violated, when a merchant having a license to sell spirituous liquor in one county in this State goes to another county and takes an order for a quantity of whisky

of some person resident in that county, and sends it to him in a jug by express from the county, in which he had a license to sell spirituous liquors, having first separated it from the bulk, in which he kept his whisky, and delivered it to the express company for transportation in the county where he had a license to sell, and which whisky is carried to the purchaser in such other county and received by him after the payment of the express charges, and the purchaser pays the seller for such whisky.

The question to be determined is, when and where on this state of facts did this whisky become the property of the purchaser? Was it when the order was given in Taylor county, or when the whisky was received and the express charges paid in Taylor county, or when the money was paid to the seller in Taylor county, or when this whisky was separated from the bulk of the whisky of the seller in Wood county, put in a jug and then delivered to the express company to be transferred to the purchaser in Taylor county? When did this purchase of this whisky amount to an actual sale, and when was it to be regarded as merely an executory contract? Benjamin in his excellent work on Sales has treated of this subject so extensively and ably, that little remains to be said on the general subject. He says in Book 2 chapter 1 § 308: "The distinction between the two contracts is this, that in a bargain and sale the thing which is the subject of contract becomes the property of the buyer the moment the contract is concluded, and without regard to the fact whether the goods be delivered to the buyer or remain in possession of the vendor; whereas in the executory agreement the goods remain the property of the vendor till the contract is executed. In the one case A. sells to B., in the other he only promises to sell. In the one case B. becomes the owner of the goods themselves as soon as the contract is completed by mutual assent. If they are lost or destroyed he is the sufferer. In the other case, as he does not become the owner of the goods, he cannot claim them specifically; he is not the sufferer if they are lost, cannot maintain trover for them, and has at common law no other remedy for breach of the contract than an action for damages." And in § 309 he says: "The agreement is just what the parties intended to make it. If

that intention is clearly and unequivocally manifested *cadit quaestio*. But parties very frequently fail to express their intentions, or they manifest them so imperfectly as to leave it doubtful what they really mean, and when this is the case,, the courts have applied certain rules of construction, which in most instances furnish conclusive tests for determining the controversy." And in § 310 he says: "Where the specific goods to which the bargain is to attach are not agreed on, it is clear that the parties can only contemplate an executory agreement. If A. buys from B. ten sheep to be delivered hereafter, or ten sheep out of a flock of fifty, whether A. is to select them, or B. is to choose which he will deliver, or any other mode of selecting the ten sheep from the remainder be agreed on it is plain, that no ten sheep in the flock can have changed owners by this *mere contract*; that something more must be done before it can be true, that any particular sheep can be said to have ceased to belong to B., and to have become the property of A." And the author in chapter 4 beginning with § 352 elucidates this contract for the sale of chattels, not specific, at considerable length. He says: " When the agreement is for the sale of a thing not specified, as a certain quantity of goods in general, without a specific identification of them, or an appropriation of them to the contract, as it is technically termed, the contract is an executory agreement, and the property does not pass. See *Browning* v. *Hamilton*, 42 Ala. 484. Until the parties are agreed on the specific individual goods, the contract can be no more than a contract to supply goods answering a particular description, and since the vendor would fulfill his part of the contract by furnishing any parcel of goods answering the description, and the purchaser could not object to them if they did answer the description, it is clear there can be no intention to transfer the property in any particular lot of goods more than another, till it is ascertained which are the very goods sold. It can make no difference, although the goods are so far ascertained that the parties have agreed that they shall be taken from some specified larger stock. In such a case the reason still appears; the parties did not intend to transfer the property in one portion of the stock more than in another, and the law, which only gives effect to

their intention, does not transfer the property in any individual portion."

The current of English authorities sustain these views of Benjamin. See *Wallace* v. *Breeds*, 13 East. 522; *Busk* v. *Davis*, 2 M. & S. 397; *White* v. *Wilks*, 5 Taunt. 176; *Gillett* v. *Hill*, 2 C. & M. 530; *Austen* v. *Craven*, 4 Taunt. 644; *Shepley* v. *Davis*, 5 Taunt. 617. See also *Campbell* v. *Mersey Docks Co.*, 14 C. B. N. S. 412; *Whitehouse* v. *Frost*, 12 East. 614. These cases are all reviewed by Benjamin in his work on Sales. Very many American cases are in accord with these English decisions. See *Warren* v. *Buckminister*, 24 N. H. 336; *Scudder* v. *Worster*, 11 Cush. 573; *Ropes* v. *Lane*, 9 Allen 502; *Golder* v. *Ogden*, 15 Penn. St. 528; *Waldo* v. *Belcher*, 11 Ired. 609; *Field* v. *Moore*, Hill & D. 418; *Merrill* v. *Hunnewell*, 13 Pick. 215, 218; *Gardner* v. *Dutail*, 9 Mass. 427; *Messer* v. *Woodman*, 22 N. H. 172; *Bailey* v. *Smith*, 43 N. H. 141; *Hutchinson* v. *Hunter*, 7 Penn. St. 140; *Bell* v. *Farrar*, 41 Ill. 400; *Rodee* v. *Wade*, 47 Barb. 63. But there are numerous cases, in which it has been held, that a severance was not necessary to complete the sale and transfer of the property, and it has been held when the subject-matter of the sale is part of an ascertained mass of uniform quality and value, that no selection is required; and in this class of cases it has been affirmed by authorities of the highest character, that severance is not as a matter of law necessary in order to vest the legal title in the vendee to the part sold, and that the title may and will pass if such is the clear intention of the contracting parties, and if there is no other reason than want of separation to prevent the transfer of title.

These views are sustained to a greater or less extent by the following cases : *Morrison* v. *Dingley*, 63 Me. 553; *Chapman* v. *Shepherd*, 39 Conn. 413; *Phillips* v. *Ocmulgee Mills*, 55 Ga. 633; *Kimberly* v. *Patchin*, 19 N. Y. 330; *Cushing* v. *Breed* 14 Allen 380; *Warren* v. *Milliken*, 57 Me. 97; *Hall* v. *Boston, & Worcester R. R. Co.*, 14 Allen 439; *Waldron* v. *Chase*, 37 Me. 414. But these cases conflict more or less with many of the cases both English and American, which we have before cited; and whatever may be the law with reference to a necessity for a severance, where the goods are of a uniform

value and quality, it is well settled, that such severance is necessary to vest the property in the vendee and complete the sale, whenever the goods are not of a uniform quality and value. See *Chapman* v. *Shepherd,* 39 Conn. 413; *Hutchinson* v. *Hunter,* 7 Penn. St. 140; *Wood* v. *McGee,* 7 Ohio 466; *Foot* v. *Marsh,* 51 N. Y. 288; *Warren* v. *Buckminster,* 24 N. H. 336; *Kein* v. *Tupper,* 52 N. Y. 550; *Southwell* v. *Breerley,* 5 Ore. 143.

In *Pleasants* v. *Pendleton,* 6 Rand. 473, it appeared, that the sale was of a certain number of barrels of flour, part of a larger parcel of the same brand and of equal value. The contract was complete in every respect, except the separation of the barrels sold; the court held, that the title passed. Judge Cabell said: "But it by no means follows, that the same principle applies to cases where the things sold are not portions of a larger mass to be separated by weighing and measuring, but consists of divers separate and individual things of the same kind and between which there is no difference," (see page 500.) We need not determine whether the fact, that the goods sold or agreed to be sold are a part of a mass of uniform goods and of equal value, would render a separation unnecessary in order to vest the property in the vendee. For all the cases agree, that no sale can be complete so as to pass title to property, where the mass itself out of which the goods agreed to be sold is not ascertained. Indeed in such a case it is impossible to conceive how any property could pass by an agreement to sell, as the goods sold are in no way ascertained or indicated till they are delierved. As Park, judge, said in *Dixon* v. *Yates,* 5 B. & Ad. 313-340, "When there is a sale of goods *generally,* no property in them passes till delivery, because until then the very goods sold are not ascertained." This being unquestionably the law, it seems to me it is obvious, that none of the orders for whisky, solicited by the defendant in this case, in the county of Taylor, and which were accepted by him, though he as a member of his firm had the unquestioned right to complete on the spot his contract to sell the whisky of his firm, without any subsequent approval by the firm, and though he did complete such contract in Taylor county and his firm became bound to fulfill such contract, yet it is impos-

sible to consider such contract for a sale as transferring any property to the vendee for the obvious reason, that not only was the whisky agreed to be sold entirely unascertained, but there was not even a larger quantity of whisky ascertained or designated, out of which the whisky agreed to be sold was to be taken.

These contracts in Taylor county were obviously simple contracts to sell a certain quantity of whisky *generally*, not only no particular jug of whisky, but not even a jug of whisky to be drawn from any designated barrel or reservoir. Such contracts to sell given quantities of whisky would obviously have been fulfilled by the defendant, had he or his firm subsequently to such contract purchased the whisky, which he subsequently delivered; and doubtless this was often done in fulfilling just such contracts. All the authorities hold that a contract for a sale of goods *generally* is necessarily but an executory contract. Such contracts cannot possibly pass the title to any goods, simply because no particular goods are specified as sold in the contract; nor is there any designation of any particular stock of goods, out of which they are to be taken, and of course no property in any specific goods could possibly pass by such a contract, nor could any portion of any bulk or stock of such goods pass, for no particular bulk or stock of goods was specified or intended as the bulk or stock, from which the goods sold were to be taken. It is simply an executory agreement, a contract whereby the vendor promised and agreed, that he would sell goods of the character stipulated for, and which contract could be complied with by the vendor purchasing such goods in the market and supplying them to his vendee.

The principles which we have laid down have been frequently applied in this country to the sale of spirituous liquors. In most cases, as in the case before us, the contract for the sale of specified quantities of spirituous liquors was made, the agreement to sell not being of any specified barrel of whisky, but simply, as in the case before us, of a specified quantity, and it was not even agreed, as in the case before us, that the quantity to be sold was to be taken out of any specified barrel or reservoir; and the courts, so far as I have been able to ascertain, have constantly held such contracts

as executory contracts, not passing the title to any spirituous liquors to the vendee, till the spirituous liquors agreed to be sold were subsequently delivered. Under peculiar circumstances it has been sometimes contended, that' when spirituous liquors have been agreed to be sold by a merchant or his agent, this agreement for the sale being made at the residence of the vendee, and the spirituous liquor is subsequently sent by the merchant by express, that the sale was a complete sale when the express agent handed the spirituous liquors over to the vendee in the place of his residence; but the conditions of the sale have to be peculiar before this can be even contended for as the law. For without peculiar conditions there can be no question, that it has been long regarded as well settled law, that where a vendor delivers goods to a carrier by order of the purchaser, such delivery is a delivery to the vendee, and vest in him property immediately on its delivery to the carrier; and therefore the place of sale is necessarily the residence of the vendor, whence the goods were shipped. The authorities sustaining this as law are numerous; among them see *Krulder* v. *Ellison,* 47 N. Y. 36; *Arnold* v. *Prout,* 51 N. H. 587–589; *Garland* v. *Lane,* 46 N. H. 245–248; *Woolsey* v. *Bailey,* 27 N. H. 217; *Smith* v. *Smith,* 27 N. H. 244, 252; *Putnam* v. *Tillotson,* 13 Metc. 517; *Staunton* v. *Eager,* 16 Pick. 467; *Johnson,* v. *Stoddard,* 100 Mass. 306–308; *Torrey* v. *Corliss,* 33 Me. 336; *Barry* v. *Palmer,* 19 Me. 303; *Wing* v. *Clark,* 24 Me. 366; *Odell* v. *Boston and Maine Railroad Co.,* 109 Mass. 50; *Rodgers* v. *Phillips,* 40 N. Y. 519; *Stafford* v. *Walter,* 67 Ill. 83; *Strong* v. *Dodds,* 47 Vt. 348; *Morton, J., in Suit* v. *Woodhull,* 113 Mass. 394; *Kline* v. *Baker,* 99 Mass. 253, 254.

Benjamin in his book on Sales then lays down the law on this point, see section 362: "In 1803 in the case of *Dalton* v. *Solomonson,* 3 B. & P. 582 per Lord Alvanley, C. J., it was treated as already settled law, that where a vendor delivered goods to a carrier by order of the purchaser, the appropriation is determined; the delivery to the carrier is a delivery to the vendee, and *the property vests immediately.* And in the United States the law is established to the same effect." Sometimes the courts have under peculiar circumstances held, that the property was vested in the vendee from

the time the goods left the warehouse of the vendor, or sometimes even before they left the warehouse of the vendor, and before they were delivered to the carrier. See *Fragano* v. *Long*, 4 B. & C. 219; *Rhode* v. *Thwaites*, 6 B. & C. 388; *Alexander* v. *Gardner*, 1 Bing. N. C. 671; *Sparkes* v. *Marshall*, 2 Bing. N. C. 761. But we need not consider under what circumstances the property vests in the vendee before it is delivered by the vendor to the carrier, and which is still in the warehouse of the vendor, because in the case before us, the whisky to be sent to Taylor county to different purchasers was all delivered to the common carrier in Wood county, and the defendant's warehouse was in the same county, therefore the completed sale, the transfer of the property in the whisky to the several purchasers must have occurred in Wood county. Under circumstances similar to these in this case, so far as I have found, the courts have held, that the completed sale of spirituous liquors was in the place of the residence of the vendor, and from which place it was shipped to the purchaser in another State or county.

Thus *Garbracht* v. *Commonwealth*, 15 Penn St. R. 449, was a case almost exactly like the one before us, and the court held, that the sale of spirituous liquors was in the county, in which the vendor resided, and from which he shipped the spirituous liquor to a purchaser in another county, who had agreed with a traveling agent of the vendor in the county where the purchasers lived to buy of them the spirituous liquors. The whisky was thus ordered and sent by freight or express from the county, where the vendor resided, and where he had a license to sell, to the vendees in a county where license to sell liquors was not granted, and where the spirituous liquors were received by the vendees in their county they paid the freight. It was decided, that the vendor could not be indicted for selling liquor without license in the county where the vendees resided, because the sale was completed and the property passed, not when the contract for the sale was made, and not when the liquors were received of the common carrier by the vendees, but when they were delivered to the common carrier for transportation to the vendees; and therefore the sale was in the county where the liquors were shipped, and where the vendor had a license to sell such liquors.

This case was exactly similar to the case before us; the only difference in the facts being, that the orders for the liquors in that case were taken by a traveling agent of the vendors, instead of one of the vendors in person as in this case. But though this fact is stated by the reporter, the court makes no reference to it, and it is obvious from the reasoning of the court, that precisely the same conclusions would have been reached had the vendor in person solicited and obtained the orders for the whisky. The decision is based on the legal inference, that the sale took place in the county in which the vendor's residence was situated. And of course this inference would have been in no manner modified because the agreement to sell was made by the principal instead of by an agent.

The counsel for the State in this case seems to assume, that there is a difference in principle between the case before us and this Pennsylvania case, because the order in the case before us was procured by the principal, or one of the members of the firm of vendors, while in the Pennsylvania case the order for the liquors was procured through the solicitations of an agent. And entertaining these views the counsel for the State has cited numerous authorities to show, that the contracts of a partner within the general scope of the business of the firm are full and complete contracts, and as immediately binding as if made by the firm; and that such contract made by a partner required no ratification by the firm, though some contracts made by an agent might require such ratification. The inference drawn is, that when such contract is made by a partner it is not an executory contract, though if made by an agent it might be an executory contract. He seems to have confounded an executory contract with a contract taking effect as a contract immediately. It is the nature of the contract, which determines whether or not it is an executory contract, and not the fact that it is made by an agent and requires ratification, nor the fact that it is made by the principal and takes effect at once. It does not follow because it takes effect at once as a contract, that it is not an executory contract. I regard, therefore, the numerous authorities referred to by the counsel for the State on this point, as entirely foreign to the case, and as throwing no light upon the point under consideration.

There are other cases, in which the courts have held the sale of spirituous liquors, under circumstances similar to those existing in this case and in said Pennsylvania case, as a sale of the spirituous liquors where the vendors reside and where the liquors were shipped to the vendees and not a sale of the liquors where the vendees resided. They are all based substantially on the same reasons, which have led us to the same conclusion. The following are some of these cases: *Boothbay* v. *Plaisted*, 51 N. H. 437; *Banchor* v. *Warren*, 33 N. H. 183; *Smith* v. *Smith*, 27 N. H. 244; *Woolsey* v. *Bailey*, 27 N. H. 219; *Gassett* v. *Godfrey*, 26 N. H. 415; *Garland* v. *Lane*, 46 N. H. 245; *Buller* v. *Northumberland*, 50 N. H 33; *Hill* v. *Spear*, 50 N. H. 253; *Webster* v. *Munger*, 8 Gray 584; *Adams* v. *Coulliard*, 102 Mass 167. The three last cases were suits brought by non-resident vendors against persons, who had bought liquors for sale in States where the sale of spirituous liquors was entirely forbidden. And the question was, whether the vendors had not so assisted in violation of the State laws as to prevent them from recovering their debts. But in none of these cases nor in many others of a similar character reported was it even contended, that the sales were made in the States where the vendees resided, though made just as the sales in this case were made. They were regarded as sales made where the vendors resided. In the case before us there has been no violation of law, either by the vendor or by the vendee. The verdict was therefore right. The instructions were not drawn accurately, but taken together they would not have misled the jury, and this being the case, the verdict should not be set aside because of the want of accuracy in some portions of the instructions. See *Huffman* v. *Alderson*, 9 W. Va. 616.

It is urged in this case by the counsel for the State, that the instructions given were based on the supposition, that the defendant was the agent and salesman of Hughes & Co., and that if those instructions were correct with reference to contracts made by such agent, they ought not to have been given, as the defendant was not simply a salesman and an agent, but he was a partner in the firm of Hughes & Co. There is nothing in this objection to these instructions. While it would have been better to have given them with

reference to such contracts being made by a partner instead of by an agent, as they would have been more apparently applicable to the case proven, yet they would have required no qualification because of the fact that the salesman was a partner of the firm, who sold the liquor. There was nothing prejudicial to the State in these instructions in this respect.

The first instruction it is claimed was erroneous because it set out, " that the State must prove beyond all doubt, that the liquors charged to be sold in the indictment were sold to E. M. Gelhousen." Now it was unnecessary to allege in the indictment to whom the liquors were sold, but it having been thus alleged, the proof had to correspond. Upon general principles it would seem to be necessary to allege to whom spirituous liquors were sold, but it has been so long held otherwise in this State, that it must now be regarded as law, that the name of the person to whom the spirituous liquors were sold need not be mentioned. · *Com.* v. *Dove*, 2 Va. Cas. 26, and *Halstead* v. *Com.*, 5 Leigh 724. But if the person is named in the indictment to whom it is charged the sale was made, on the principles of pleading, the evidence must correspond with such allegation.

It is objected, that this instruction lays down the law incorrectly in saying, that the State must prove this sale beyond *all* doubt, and that at the most it should only have said beyond *all reasonable doubt.* No doubt the law would have been laid down more clearly if this word " reasonable," in this part of this instruction, had been used to qualify the word " doubt," but as it was done directly afterwards in the same instruction I can hardly think, that the jury could have been misled by this instruction taken, as a whole. When we look at the evidence we can then say with confidence, that the supposed error could not have prejudiced the State, for we see from it, that the sale of whisky charged was proven beyond all doubt, and the only real question in the case was, whether this sale was proven to have occurred in Taylor county. The jury therefore, we must infer, regarded the sale of the whisky as proven, and they under the instructions of the court properly held, that the sale was in Wood and not in Taylor county. There was then no error in the instructions given, for which the judgment of the court below

should be reversed. My conclusion therefore is, that said judgment should be affirmed.

THE OTHER JUDGES CONCURRED.

AFFIRMED.